1  SALLIE KIM, State Bar No. 142781
   KIMBERLY A. DONOVAN, State Bar No. 160729
2  GCA LAW PARTNERS LLP
   1891 Landings Drive
3  Mountain View, California 94043
   Telephone: (650) 428-3900
4  Facsimile: (650) 428-3901

5  Attorneys for Defendants GEORGE CHOI,
   LUIZ DASILVA, and THERATIVE, INC.,
6  formerly known as DERMACARE, INC.

7              UNITED STATES DISTRICT COURT

8              NORTHERN DISTRICT OF CALIFORNIA

9

10 JOSEPH NEEV,                                )  Case No. C-08-02860-PVT
                                               )
11         Plaintiffs,                         )  MEMORANDUM OF POINTS AND
                                               )  AUTHORITIES IN RESPONSE TO
12         vs.                                 )  ORDER TO SHOW CAUSE WHY CASE
                                               )  SHOULD NOT BE REMANDED TO
13 DOES 1-100; GEORGE CHOI, an individual,     )  STATE COURT FOR LACK OF
   LUIZ DASILVA, an individual, THERATIVE,     )  JURISDICTION
14 INC., an individual; DERMACARE, INC., a     )
   Delaware corporation;                       )
15                                             )
           Defendants.                         )
16                                             )
   _____ )
17
18
25
20
21
22
23
24
25
26
27
28

## I.   Introduction

Defendants GEORGE CHOI, an individual, LUIZ DASILVA, an individual, THERATIVE, INC., a corporation (formerly known as DERMACARE, INC.), a Delaware corporation (collectively, "Defendants") file this Memorandum of Points and Authorities showing cause why this case should not be remanded to state court for lack of jurisdiction, pursuant to this Court's Order of June 17, 2008.

This Court retains jurisdiction over this matter because Plaintiff's right to relief necessarily depends on resolution of several substantial question of federal patent law: inventorship, validity, and claim scope. Plaintiff, in a highly unusual First Amended Complaint, claims that he revealed "Confidential Information" from his own patent application that he had already filed on a confidential basis with the United States Patent and Trademark Office to Defendants, and that Defendants, unaware that Plaintiff had already filed that patent application, then took that Confidential Information from it and put it in their own patent applications. Plaintiff also alleges that Defendants, in filing their own patent applications containing Plaintiff's Confidential Information (which included Plaintiff's invention from his own solely-owned patent application), did so by naming a co-inventor who was not an actual co-inventor. Plaintiff alleges that Defendants lied to him when they said that they had filed the two additional patent applications to enhance the protection of his own original patent application. Plaintiff claims that Defendants defrauded him and breached a contract with him for payment by using his invention (which includes material from Plaintiff's patent application) without paying him as Defendants had said they would.

Thus, adjudication of the First Amended Complaint, allegedly based on state law, necessarily turn on the construction of a substantial, disputed federal question of federal patent law regarding inventorship, invalidity, and claim scope. Thus, this case must be adjudicated in this Court rather than in state court.

## II.   Statement of Facts

This lawsuit arises out of three patent applications which are attached to the First Amended Complaint: one for which Plaintiff is listed as the sole inventor and two patent

1

applications for which individual Defendants Luiz DaSilva and George Choi are listed as co-inventors, along with Plaintiff. Here, the entire First Amended Complaint revolves around patent related issues. Plaintiff sets forth his qualifications and enumerates all of the patents in which he is named as an inventor or co-inventor. FAC, ¶ 9. He then alleges that he is the inventor of a certain invention as disclosed in the '510 Application and extensively describes and quotes that application. FAC, ¶¶ 10-12. Plaintiff alleges that he revealed his "Invention" from his "confidential" patent application, Application No. 60/615,510 (the " '510 Application"), along with some other non-patented but unidentified material, to Defendants. Plaintiff alleges that, despite Defendants' agreement not to use that Invention, they then used that information in their own patent applications and are currently using Plaintiff's invention from his '510 Application in products.

Plaintiff claims that Defendants DaSilva and Choi purported to conceive of a new invention but that this invention was already disclosed in Plaintiff's '510 Application and that that Defendants then insisted on filing additional provisional applications (the '740 and '940 Applications) with Plaintiff and individual Defendants named as inventors. FAC, ¶¶20-22. Plaintiff contends that Defendants then filed full utility applications without including Plaintiff as an inventor. The issues raised necessarily involve questions of inventorship, claim scope and validity, all of which are core patent law issues that should properly be decided in the federal court.

The gravamen of the Third Cause of Action for breach of contract is that Defendants breached a contract with Plaintiff because they agreed not to disclose *or use* Plaintiff's Confidential Information (which includes the invention in the '510 Application) but both disclosed *and used* that Confidential Information. The gravamen of the Fifth Cause of Action for promissory estoppel, and Seventh Causes of Action for "Promissory Fraud" is that Defendants falsely told Plaintiff that they would not disclose or use his Confidential Information (which includes the invention in the '510 Application), but they did both disclose and use it. The Fourth Cause of Action for *quantum meruit* alleges that Defendants are using

2

1  Plaintiff's Confidential Information (which includes the invention in the '510 Application) and
2  that they owe him money for that use.
3      The Sixth Cause of Action alleges that Defendants falsely represented that the filing of
4  two patent inventions with three co-inventors (Plaintiff and two individual Defendants) was
5  necessary to enhance the protection of Plaintiff's own patent, but that the allegation was false.
6      Plaintiff claims that he is the sole inventor of an invention called "Treating Skin
7  Disorders with Thermal Energy," with is the subject of the '510 Application. FAC, ¶ 10.
8  Plaintiff claims that the '510 Application contained his "Invention." *Id.* Plaintiff claims that
9  the '510 Application and Invention contained in that '510 Application, combined with other
10 unidentified "know-how, experience, marketing plans and other information" constituted
11 "Confidential Information" that Plaintiff disclosed to Defendants DaSilva and Choi in
12 confidence. FAC, ¶ 16. Plaintiff states:

> Mr. Neev is the sole inventor of the invention "Treating Skin Disorders
> with Thermal Energy," which is the subject of United States Provision
> Patent Application Number 60/615,510. (The application shall be
> described as the " '510 Provisional"; the invention that Plaintiff Mr. Neev
> conceived of shall be described as the "Invention.")
>
> . . .
>
> (Collectively, the know-how, experience, marketing plans and other
> information Mr. Neev disclosed to Defendants in confidence shall be
> called the "Confidential Intellectual Capital.") The '510 Provision, the
> Invention, and the Confidential Intellectual Capital shall be referred to
> herein as the "Confidential Information."

21 FAC, ¶¶ 10, 16. Thus, Plaintiff's own definition of "Confidential Information" contains both
22 material in the '510 Application and other unidentified "know-how, experience, marketing
23 plans and other information Mr. Neev disclosed to Defendants in confidence."
24     Plaintiff expressly alleges that, at the time he disclosed the '510 Application and the
25 Invention contained in the '510 Application, he had already filed his patent application for that
26 Invention on a confidential basis. *Id.* ¶ 11-15.  Plaintiff expressly seeks protection under trade
27 secret law for the material contained in the '510 Application. FAC, ¶ 16.
28

3

1   Plaintiff alleges that, after receiving the Confidential Information, Defendants DaSilva
2   and Choi then prepared their two other Patent Applications (which Plaintiff calls the "Invalid
3   Applications").[1] The two "Invalid Applications" listed three co-inventors: Plaintiff and
4   individual Defendants DaSilva and Choi. FAC, ¶ 20. Plaintiff claims that he reviewed the
5   "Invalid Applications" before they were filed. *Id.* Plaintiff claims that the two additional
6   patent applications (which Plaintiff refers to as the "Invalid Applications") were based on
7   information already in the '510 Application and did not disclose anything "new or innovative."
8   *Id.* Plaintiff further alleges that the addition of individual Defendant Choi as a co-inventor was
9   "fraudulent" and that he did not know about the inclusion of Defendant Choi . *Id.* ¶ 21.

10  The Sixth Cause of Action for fraud alleges that Defendants represented that the "filing
11  of the Invalid Applications [with Defendants Choi and DaSilva as co-inventors] was for the
12  purposes of enhancing the protection of [Plaintiff's] original invention" but that those
13  representations were false. FAC, ¶ 51. As noted earlier, Plaintiff specifically alleged that
14  listing individual Defendant Choi on the two "Invalid Applications" was a "fraudulent" act.
15  FAC ¶ 21.

16  The Third Cause of Action for breach of implied contract alleges that Defendants
17  accepted Plaintiff's Confidential Information and that they greed to pay "fair value" for it.
18  FAC, ¶ 39. Plaintiff alleges that Defendants have not paid Plaintiff. FAC, ¶ 41.

25  The Fourth Cause of Action for *quantum meruit* alleges that Defendants "continue to
20  use [Plaintiff's] invention and Confidential Information" and that Defendants "owe Mr. Neev
21  the value of the invention and Confidential Information and the value derived from the use of
22  it." FAC, ¶ 44.

23  The Fifth Cause of Action for promissory estoppel alleges that "Defendants further
24  promised to maintain the confidentiality of the invention and Confidential Information and to
25  refrain from using the invention and the Confidential Information[.]" FAC, ¶ 47. Plaintiff

---

[1] Although Plaintiff refers to these two patent applications as the "Invalid Applications," there is no allegation that the US PTO or any court of law has ruled on invalidity. For ease of reference to the First Amended Complaint, Defendants will refer to those two patent applications as the "Invalid Applications" but do not concede that they are invalid.

4

also claims that, "Defendants promised Mr. Neev that if Defendants used the invention and Confidential Information that Mr. Neev would receive a 34% interest in the company . . . ." but that "Defendants have not fulfilled their promises." FAC, ¶¶ 47, 49.

The Seventh Cause of Action for promissory fraud contains almost identical allegations about a promise to keep the Confidential Information confidential and not to use it. FAC, ¶ 56.

### III.     Legal Argument

This Court has jurisdiction over this case because adjudication of each of the causes of action requires resolution of substantial issues of federal patent law: inventorship, validity and claim scope. This case is distinguishable from Thompson v. Microsoft Corp., 471 F.3d 1288 (Fed. Cir. 2006), a case in which the Federal Court was considering whether it had jurisdiction over an appeal and where the plaintiff had acknowledged that "inventorship is 'irrelevant' and 'not critical' to the pleaded cause of action." Thompson, 471 F.3d at 1292.

Federal courts have exclusive jurisdiction over matters arising out of the patent laws of the United States. 28 U.S.C. § 1338(a). Federal question jurisdiction based on the patent laws extends "only to those cases in which a well-pleaded complaint establishes either [1] that federal patent law creates the cause of action or [2] that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal patent law, in that patent law is a necessary element of one of the well-pleaded claims." Christianson v. Colt Operating Corp., 486 U.S. 800, 808-809 (1988). Since Plaintiff's causes of action are state law torts, federal law did not create these causes of action. Therefore, the second Christianson prong is the focus of the analysis here. The Supreme Court later clarified the Christianson test, describing it as a determination whether "a state-law claim necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 314 (2005). The federalism issues raised by Grable must be considered in evaluating the second Christianson prong.

The Federal Circuit has specifically ruled that issues of infringement, inventorship, attorney's fees under 35 U.S.C § 285, right to file a revival or continuation in part application, validity, and enforceability are "substantial enough to satisfy the jurisdictional test." Hunter Douglas, Inc. v. Harmonic Design, Inc., 153 F.3d 1318, 1330-31 (Fed. Cir. 1998), cert. denied, 525 U.S. 1143 (1999), overruled in part on other grounds by Midwest Indus., Inc. v. Karavan Trailers, Inc., 175 F.3d 1356, 1361 (Fed. Cir. 1999) (citations omitted). Claim scope has also been held to present a substantial question of patent law. Immunocept, LLC v. Fulbright & Jaworski, LLP, 504 F.3d 1281, 1285 (Fed. Cir. 2007).

### A. Adjudication of the Third, Fourth, Fifth and Eighth Causes of Action Require the Court to Determine Substantial Federal Questions of Whether Defendants Are Using Patented Material

Federal jurisdiction is appropriate for the Third, Fourth, Fifth and Eighth Causes of Action because Plaintiff, to prevail, must show that Defendants are using material contained in Plaintiff's '510 Application and that they listed an inventor that was not a true co-inventor. Analysis of these issues will require analysis of use of the patented material, scope of the '510 Application, and inventorship issues. All of these are federal issues that must be decided in this Court. As noted above, claim scope and inventorship are federal matters that must be adjudicated in federal court, even as part of state law causes of action. Immunocept, 504 F.3d at 1285 (claim scope required federal jurisdiction over legal malpractice claim); MCV, Inc. v. King-Seeley Thermos Co., 870 F.2d 1568, 1570 (Fed. Cir. 1989) (section 1338(a) jurisdiction is proper under the second prong of Christianson because a "dispositive issue on the merits would be the definition of the invention," so "relief necessarily depends on resolution of a substantial question of federal patent law" of inventorship); see also RustEvader Corp. v. Cowatch, 842 F.Supp. 171, 173-74 (W.D. Pa. 1993).

Patent scope and inventorship issues will also be critical to determination of whether Defendants' ultimate filing of utility applications without the inclusion of Plaintiff as an inventor and alleged inclusion of information disclosed in the '510 Application in Defendants'

6

products breached any implied contract or otherwise entitles Plaintiff to relief under these causes of action. The scope of the '510 Application will have to be determined as a first step in that analysis. Additionally, inventorship, including application of the rules applicable to determination of proper inventorship for both provisional and utility applications, will have to be considered. As set forth in his complaint, Plaintiff must prove his claims that Defendants did not invent new material that qualified the defendants to be inventors in the "Invalid Applications." Plaintiff must further show that the scope of the '510 Application includes material that was later incorporated into defendants' own utility applications and Defendants' products. These allegations are critical to Plaintiff's case and involve complex issues of patent interpretation and inventorship issues. Thus, resolution of substantial federal patent law will be necessary to resolution of each of these causes of action.

Moreover, adjudication of this cause of action will require this Court to examine whether Defendants are using or have used material in the '510 Application – another federal patent issue. The Federal Circuit has ruled in the context of breach of contract that, if such a determination of whether the defendant is using patented material is necessary for the action, federal jurisdiction is appropriate. U.S. Valves, Inc. v. Dray, 212 F.3d 1368 (Fed. Cir. 2000). See also Highland Supply Co. v. Prima Tek II, LLC, 2005 U.S. Dist. LEXIS 38013 (S.D. Ill. 2005) (adjudication of state law claim for breach of contract required court to determine infringement). In U.S. Valves, the Court found that there was federal jurisdiction over a state cause of action for breach of a licensing agreement because adjudication of the claim required the court to determine whether the defendant was using patented material, a substantial federal issue. In U.S. Valves, the plaintiff and the defendant entered into a contract in which the defendant was to pay the plaintiff for using the plaintiff's patent. The plaintiff then filed suit to enforce the contract, claiming that the defendant was using patented material but not paying the contracted amount. The Federal Circuit found that, in order for the plaintiff to prevail, it had to show that the defendant was using its patent. Id. at 1371-72. Evaluating "use" of a patent in necessary to the present action and requires determination of significant patent law issues.
7

### B. Adjudication of the Sixth and Seventh Fraud Causes of Action Requires Analysis of Substantial Federal Questions of Invalidity and Inventorship

Plaintiff appears to allege the following false statements or acts as a basis for his fraud claims:[2]

1) Defendants' filing of the "Invalid Applications" was a scheme by Defendants to defraud Plaintiff (FAC, ¶ 22);

2) Defendants' subsequent full utility applications and PCT application improperly omit Plaintiff and include Defendants Choi and DaSilva as inventors, leading the applications to be fraudulent and invalid (FAC, ¶ 27);

3) Defendants misrepresented that the filing of the "Invalid Applications" was to enhance the protection of Plaintiff's original invention (FAC, ¶ 51);

4) Defendants promised Plaintiff that, if Defendants used Plaintiff's Invention, then Plaintiff would receive compensation (FAC, ¶ 56); and

5) Defendants promised Plaintiff that they would maintain the confidentiality of the Invention and would not use it for commercial purposes without Plaintiff's consent (FAC, ¶56).

Plaintiff must show invalidity of Defendants' two "Invalid Patents" (and possibly the three subsequent full utility applications) to prevail on the fraud causes of action. Additionally, in order for Plaintiff to prove that Defendants made a false statement that they would pay him for the use of his invention in his '510 Application, Plaintiff must prove that Defendants are in fact using the invention in the '510 Application, requiring analysis of patent scope and use. And in order for Plaintiff to prove his claim that Defendants falsely claimed that they would not disclose the invention in the '510 Application, Plaintiff must again show

---

[2] At this time Defendants believe that Plaintiff's fraud causes of action are not alleged with adequate particularity, as required by Rule 9(b) of the Federal Rules of Civil Procedure. Of course, Defendants are not attempting to challenge the pleading at this time by way of this motion. However, the lack of specificity does make it difficult for the Defendants to fully understand the claims that serve as a basis for the fraud claims and therefore to fully brief the specific patent issues necessary to resolution of the claims. Based on the present pleading, Defendants attempt to derive the likely basis for the alleged fraud.

8

1  that he had a patent, the scope of disclosure of that patent, and that Defendants in some manner
2  violated that agreement. See, e.g., Robertson v. Baker Oil Tools, Inc., 2002 U.S. Dist. LEXIS
3  9368 (N.D. Texas 2002) (breach of contract claim based on both confidentiality agreement and
4  licensing agreement turned on substantial federal question of patent law).

5      The Federal Circuit has ruled in the context of proving a false statement that, if
6  substantial issues of federal patent law are implicated, then federal jurisdiction is appropriate.
7  Hunter Douglas, 153 F.3d at 1329-1331 (federal court had jurisdiction over California causes
8  of action for unfair competition, "injurious falsehood," negligence, and interference with
9  prospective economic advantage because plaintiffs were required to prove that patents were
10  defective to prevail on state court causes of action). See also Additive Controls &
11  Measurement Systems, Inc. v. Flowdata, Inc., 986 F.2d 476 (Fed. Cir. 1993) (state court
12  business disparagement claim was properly in federal court because resolution of case turned
13  on a patent question of infringement). In Hunter Douglas, the plaintiff claimed that the
14  defendant made a false statement that the defendants held the exclusive rights to make or sell
15  certain window shades covered by a patent, and the Court found that this raised a substantial
16  issue for federal jurisdiction because, in order to prove that defendant's statement was false,
17  the plaintiff would have to prove that the patent was invalid and unenforceable. 153 F.3d at
18  1329. Here once again, federal patent law must be applied in order to resolve these claims.

    **C.    This Case is Distinguishable from *Thompson v. Microsoft***

20      Defendants agree that federal jurisdiction cannot be based upon a defense of federal
21  patent preemption, but Defendants here do not base their claim to federal jurisdiction on a
22  defense of federal patent preemption.[3] This case is completely different from Thompson, the
23  case noted in the Order to Show Cause. In Thompson, the only potential federal question was
24  the defense based on federal patent preemption. In Thompson, the plaintiff asserted a cause of
25  action for unjust enrichment, and Microsoft asserted a defense of federal patent preemption.

---

[3] Defendants reserve their right to challenge the First Cause of Action for conversion and Second Cause of Action for misappropriation of trade secrets on a federal preemption defense, but Defendants do not base their claim to federal jurisdiction on the First and Second Causes of Action.

1  Thompson acknowledged that "inventorship is 'irrelevant' and 'not critical' to the pleaded
2  cause of action." 471 F.3d at 1292. Here, in contrast, Plaintiff's own affirmative claims
3  necessarily depend on resolution of several questions of federal patent law, including scope,
4  use, inventorship, and validity, as discussed in detail above.

**IV.     Conclusion**

Based on the arguments and the allegations of the First Amended Complaint, Defendants respectfully contend that federal jurisdiction is appropriate in this Court. Defendants' counsel is available for this Court for oral argument, if this Court wishes to examine this matter further.

DATED:  July 8, 2008                                    GCA LAW PARTNERS LLP


                                                        By _____
                                                                Sallie Kim

                                                        Attorneys for Defendants GEORGE
                                                        CHOI, LUIZ DASILVA, and
                                                        THERATIVE, INC., formerly known as
                                                        DERMACARE, INC.

10