KENNETH G. PARKER (SBN 182911)
    kparker@tlpfirm.com
ROBERT G. LOEWY (SBN 179868)
    rloewy@tlpfirm.com
TEUTON, LOEWY & PARKER LLP
3121 Michelson Drive, Suite 250
Irvine, California 92612
Telephone:   (949) 442-7100
Facsimile:    (949) 442-7105

Attorneys for PLAINTIFF

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA,

SAN JOSE DIVISION

| | |
|---|---|
| JOSEPH NEEV, an individual,<br><br><br>Plaintiffs,<br><br>vs.<br><br><br>GEORGE CHOI, et al.,<br><br><br>Defendants. | Case No. C 08-2860 PVT<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION TO REMAND MATTER FOR LACK OF SUBJECT MATTER JURISDICTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:       September 9, 2008<br>Time:      10:00 a.m.<br>Place:     Courtroom 5<br>              4th Floor<br>              280 South First Street<br>              San Jose, California 95113 |

**TO THE COURT AND TO ALL PARTIES AND THEIR**

**ATTORNEYS OF RECORD:**

　　　　PLEASE TAKE NOTICE that on September 9, 2008, at 10:00 a.m., in

Courtroom 5, 4th Floor, 280 South First Street, San Jose, California 95113,

Plaintiff will, and hereby does, move for an order remanding this case back to

state court for lack of subject matter jurisdiction pursuant to 28 U.S.C. § 1447(c) .

Plaintiffs make this Motion based on this Notice and Motion; the attached

1

1    Memorandum of Points and Authorities; the Court's file in this matter; and such

2    other matters as this Court may appropriately consider.

3

4    Dated: July 21, 2008                TEUTON, LOEWY & PARKER LLP

5                                           KENNETH G. PARKER

6                              By: /s/ Kenneth G. Parker

7                                    Kenneth G. Parker
                                          Attorneys for Plaintiff

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S MOTION TO REMAND             C 08-2860 PVT

# TABLE OF CONTENTS

**Page No.**

I.    PRELIMINARY STATEMENT ................................................................. 1

II.   PLAINTIFF NEEV'S COMPLAINT ....................................................... 1

III.  PROCEDURAL HISTORY ..................................................................... 4

IV.   ARGUMENT ........................................................................................... 4

    A.    For § 1338(a) to Apply, At Least One Cause of Action in
           the First Amended Complaint Must Necessarily Depend
           Upon Patent Law .......................................................................... 4

    B.    None of Plaintiff's Causes of Action *Necessarily Depends*
           Upon a Question of Patent Law. ................................................... 9

          1.    Neev's First and Second Causes of Action for
                Conversion and Misappropriation of Trade Secrets
                Do Not "Necessarily Depend" Upon Patent Law ................. 11

          2.    Neev's Third, Fourth and Eighth Causes of Action
                for Breach of Implied Contract, Quantum Meruit
                and Accounting Do Not "Necessarily Depend"
                Upon Patent Law. ................................................................ 14

          3.    Neev's Fifth and Sixth Causes of Action for Fraud
                 and Promissory Fraud Do Not "Necessarily
                Depend" Upon Patent Law. .................................................. 17

               a.    Neev Alleges Numerous Misrepresentations
                    That Are Not Patent-Related In Any Way. ................. 18

               b.    Even Neev's Allegations that Mention the
                    "Invalid Applications" Do Not "Necessarily
                    Depend" on Issues of Patent Law. ............................. 19

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

c.    Neev's Allegations that Mention the "Invalid Applications" Do Not Remotely Raise Viable Federal Question............................................................ 20

4.    Neev's Seventh Cause of Action for Promissory Estoppel Does Not Turn on Patent Law. ............................... 21

V.    CONCLUSION ........................................................................................... 21

# TABLE OF AUTHORITIES

**Page No.**

## U.S. SUPREME COURT CASES

*Christianson v. Colt Indus. Operating Corp.*,
    486 U.S. 800 (1988) ...................................................................... 1, 5, 6, 7, 8

*Grable & Sons Metal Products, Inc. v. Darue Eng'g. & Mfg.*,
    545 U.S. 308 (2005) .............................................................................. 22

## NINTH CIRCUIT CASES

*Emrich v. Touche Ross & Co.*,
    846 F.2d 1190 (9th Cir. 1990) ............................................................... 4

*Gaus v. Miles, Inc.*,
    980 F.2d 564 (9th Cir. 1992) ................................................................. 4

## FEDERAL CIRCUIT CASES

*Air Measurement Techs., Inc. v. Akin Gump Strauss Hauer & Feld,*
    *L.L.P.*, 504 F.3d 1262 (Fed. Cir. 2007) ................................................ 7

*Am. Tel. & Tel. Co. v. Integrated Network Corp.*,
    972 F.2d 1321 (Fed. Cir. 1992) ........................................................... 12

*Beghin-Say Int'l, Inc. v. Ole-Bendt Rasmussen*,
    733 F.2d 1568 (Fed. Cir. 1984) ........................................................... 15

*Board of Regents v. Nippon Tel. & Tel. Corp.*,
    414 F.3d 1358 (Fed. Cir. 2005) ........................................................... 12

*Consolidated World Housewares, Inc. v. Finkle*,
    831 F.2d 261 (Fed. Cir. 1987) ............................................................. 12

*Eli Lilly & co. v. Aradigm Corp.*,
    376 F.3d 1352 (Fed. Cir. 2004) ........................................................... 21

*Hunter Douglas, Inc. v. Harmonic Design*,
    153 F.3d 1318 (Fed. Cir. 1998), cert. denied, 525 U.S. 1142 (1999) ............... 5

*Immunocept, LLC v. Fulbright & Jaworski, LLP*,
    504 F.3d 1281 (Fed. Cir. 2007) ............................................................. 7

*Jim Arnold Corp. v. Hydrotech Sys., Inc.*,
    109 F.3d 1567 (Fed. Cir. 1997) ........................................................... 15

iii

*Kroll v. Finnerty*,
    242 F.3d 1359 (Fed. Cir. 2001) ........................................................................ 9

*Midwest Indus., Inc. v. Karavan Trailers, Inc.*,
    175 F.3d 1356 (Fed. Cir. 1999) ........................................................................ 5

*Schwarzkppf Dev. C. v. Ti-Coating, Inc.*,
    800 F.2d 240, 244 (Fed. Cir. 1986) ................................................................ 8

*Speedco, Inc. v. Estes*,
    853 F.2d 909 (Fed. Cir. 1988) ...................................................................... 16

*Thompson v. Microsoft Corp.*,
    471 F.3d 1288 (Fed. Cir. 2006) ...................................................................... 1


### DISTRICT COURT CASES IN THE NINTH CIRCUIT

*Altavion, Inc. v. Konica-Minolta Sys. Lab., Inc.*,
    2008 U.S. Dist. LEXIS 37768 (N.D. Cal. May 7, 2008) ..................... 1, 16, 20

*Conroy v. Fresh Del Monte Produce, Inc.*,
    325 F.Supp.2d 1049 (N.D. Cal. 2004) ........................................................... 12

*Lighting Science Group Corp. v. Koninklijke Philips Electronics N.V.*,
    2008 U.S. Dist. LEXIS 43959 (E.D. Cal. June 3, 2008) ............................ 11, 12


### DISTRICT COURT CASES OUT OF NINTH CIRCUIT

*Eddings v. Glast*,
    2008 U.S. Dist. LEXIS 48589 (N.D. Tex. June 24, 2008) ............................... 8

*Taylor v. Kochanowski*,
    2008 U.S. Dist. LEXIS 20430 (E.D. Mich. Mar. 14, 2008) ............................. 8


### CALIFORNIA SUPREME COURT CASES

*Bates v. McTammany*,
    10 Cal.2d 697, 76 P.2d 513 (1938) ................................................................ 17

*Crane v. Derrick*,
    157 Cal. 667, 109 P. 31 (1910) ...................................................................... 16

*Desny v. Wilder*,
    46 Cal.2d 715, 299 P.2d 257 (1956) .............................................................. 14

iv

*Estate of Mumford*,
    173 Cal. 511, 160 P. 667 (1916)........................................................................16

*Reynolds v. Bement*,
    36 Cal.4th 1075, 116 P.3d 1162, 32 Cal.Rptr.3d 483 (2005)...........................17

*Southern California First Nat'l Bank v. Quincy Cass Associates*,
    3 Cal.3d 667, 478 P.2d 37, 91 Cal.Rptr. 605 (1970)........................................17

*Weitzenkorn v. Lesser*,
    40 Cal.2d 778, 256 P.2d 947 (1953)..................................................................15


## CALIFORNIA COURT OF APPEAL CASES

*Am. Credit Indem. Co. v. Sacks*,
    213 Cal.App.3d 622, 262 Cal.Rptr. 92 (1989) ..................................................17

*Bendien v. Solov*,
    89 Cal.App.2d 904, 202 P.2d 372 (1949)..........................................................17

*By-Buk Co. v. Printed Cellophane Tape Co.*,
    163 Cal.App.2d 157, 329 P.2d 147 (1958).........................................................17

*Mayborne v. Citizens Trust & Savings Bank*,
    46 Cal.App. 178, 188 P. 1034 (1920)................................................................16

*Taylor v. Sanford*,
    203 Cal.App.2d 330, 21 Cal.Rptr. 697 (1962) ..................................................17

*Estate of Peebles*,
    27 Cal.App.3d 163, 103 Cal.Rptr. 560 (1972) ..................................................17


## NON-CALIFORNIA STATE COURT CASE

*Elfenbein v. Luckenbach Terminals*,
    166 A. 91, 93 (N.J. 1933) .................................................................................15


## FEDERAL STATUTES

28 U.S.C. § 1295..................................................................................................6

28 U.S.C. § 1338(a) .......................................................................................1, 5

28 U.S.C. § 1447(c) .............................................................................................4

| PLAINTIFF'S MOTION TO REMAND | C 08-2860 PVT |

1

# **CALIFORNIA STATUTES**

2

Cal. Civ. Code § 3426.1(a) ............................................................................. 11, 12

3

Cal. Civ. Code § 3426.1(d)(1) ............................................................................. 11

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1                           **MEMORANDUM OF POINTS AND AUTHORITIES**

2

3  **I.       PRELIMINARY STATEMENT**

4         Defendants have removed a garden-variety fraud and misappropriation of

5 trade secrets case that happens to involve some patent applications.  Defendants

6 assert that the existence of patent applications establishes federal jurisdiction under

7 28 U.S.C. § 1338(a), which creates subject matter jurisdiction in cases arising out of

8 United States patent laws.

9         There is no such jurisdiction here.  First, none of plaintiff Joseph Neev's

10 claims seek relief under federal law.  Second, none of the eight state law causes of

11 action in the First Amended Complaint "necessarily depend" upon issues of patent

12 law.  The Supreme Court in *Christianson v. Colt Indus. Operating Corp*., 486 U.S.

13 800, 808-09, 108 S. Ct. 2166, 100 L. Ed. 2d 811 (1988)), the Ninth Circuit in

14 *Thompson v. Microsoft Corp.*, 471 F.3d 1288, 1292 (Fed. Cir. 2006), and Judge

15 Patel in *2, Inc. v. Konica-Minolta Sys. Lab., Inc.*, 2008 U.S. Dist. LEXIS 37768

16 (N.D. Cal. May 7, 2008), have consistently applied this standard to find that causes

17 of action that may implicate patent law, but do not *necessarily* depend upon it, do

18 not create § 1338(a) jurisdiction.  This Court should remand this action to state

19 court.

20

21  **II.      PLAINTIFF NEEV'S COMPLAINT**

22         Mr. Neev filed his First Amended Complaint in state court against defendants

23 Luiz DaSilva, George Choi, Therative, Inc., and Therative's predecessor.  Mr. Neev

24 pleaded eight state law causes of action:  (1) conversion; (2) misappropriation of

25 trade secrets; (3) breach of implied contract; (4) quantum meruit; (5) promissory

26 estoppel; (6) fraud; (7) promissory fraud; and (8) accounting.

27         The First Amended Complaint asserts that the defendants had stolen

28 Mr. Neev's "Confidential Information," which is defined in the First Amended

1   Complaint to include the information and inventions found both in a provisional

2   application Mr. Neev filed (defined as the "'510 Provisional"), the invention that is

3   described in the First Amended Complaint (defined as the "Invention"), and other

4   experience, marketing plans, and know-how (defined as the "Confidential

5   Intellectual Capital").  (*See* First Amended Complaint ("FAC") ¶¶ 10, 16.)

6        The First Amended Complaint describes the Invention in a fairly high degree

7   of detail, mainly to highlight the absurdity of the defendants' later claim to have

8   independently conceived of their product without the benefit of Mr. Neev's trade

9   secrets, as well as to debunk the claim that defendants' current product is not based

10  on Mr. Neev's Confidential Information.  (*See* FAC ¶¶ 11-13.)  The First Amended

11  Complaint further alleges that the Confidential Information, including the '510

12  Provisional, were *confidential and not publicly known* at the time they were

13  disclosed to the defendants in confidence.  (FAC ¶¶ 11, 15.)

14       Neev disclosed the Confidential Information to the defendants in confidence,

15  and the defendants agreed and represented that they would keep it in confidence and

16  not further use it without Neev's consent.  (FAC ¶¶ 15, 17, 47, 56.)  Importantly, the

17  Confidential Information included not just the '510 Provisional, but other

18  Confidential Intellectual Capital, which did not include the Invention.  (FAC ¶ 16.)

19       Defendants Choi and DaSilva also promised Neev that he would receive an

20  approximately 1/3 interest in a corporation to be formed to create a product and

21  marketing plan based on the Confidential Information.  (FAC ¶ 18.)  It was after this

22  promise was made that DaSilva and Choi filed separate and subsequent provisional

23  patent applications.  Mr. Neev alleges that the filing of those subsequent provisional

24  applications was part of a fraudulent scheme to misappropriate and convert the

25  Confidential Information to the defendants' use, in violation of their obligations to

26  him.  (FAC ¶ 21, 22.)

27       After Messrs. DaSilva and Choi had gained the benefit of Mr. Neev's

28  Confidential Information, they refused to come to final terms with him regarding

1    ownership and status of the proposed corporation, which later became Therative.

2    They refused to meet certain previously agreed-upon terms.  (FAC ¶ 23.)

3        After this refusal occurred, Mr. Neev demanded, many times, in writing and

4    verbally, that DaSilva, Choi and their company (later to be known as Therative)

5    either: (1) come to amicable terms with Mr. Neev; or (2) cease all use of the

6    Confidential Information and return it to Mr. Neev.  These demands were

7    communicated to Defendants in clear and certain terms on more than one occasion.

8    (FAC ¶ 24.)

9        Despite Mr. Neev's warnings, defendants chose to develop, market and sell a

10    device and complementary products that were derived from the Confidential

11    Information.  The First Amended Complaint concludes that "Defendants have,

12    without Mr. Neev's consent, used Mr. Neev's Confidential Information for their

13    own profit.  Defendants have continued to do even after being repeatedly notified

14    of, and with full knowledge of, Mr. Neev's ownership of the invention and the

15    Confidential Information." (FAC ¶ 26.)

16        Finally, the First Amended Complaint does allege that defendants have filed

17    non-provisional applications based on invalid provisional applications because they

18    are inaccurate as to inventorship.  However, Mr. Neev expressly states as follows:

19        Mr. Neev pleads no cause of action based on this paragraph at this

20        time, but reserves the right to raise this issue *in the appropriate forum*

21        when the claim related to proper inventorship is ripe.

22    (FAC ¶ 27 (emphasis added).)[1]

23

24

25

---

26        [1]  As is noted below at Section IV.B.[], *infra*, no cause of action to correct
inventorship or invalidate an *application* exists.  So in addition to the fact the First
Amended Complaint expressly disclaims pleading such a cause of action, by definition it
does not plead it because it cannot be pleaded.  A cause of action fileable in federal court
to correct inventorship may never come into existence, since defendants' applications must
result in issued patents for any cause of action to correct invention to exist.

## III.  **PROCEDURAL HISTORY**

Defendants removed the First Amended Complaint to this Court on June 9, 2008.  Plaintiff does not assert any procedural defects in the removal.  On June 17, 2008, Judge Trumbull ordered defendants to show cause, buy July 8, 2008, why the case should not be remanded.  Defendants filed their memorandum on July 8, 2008.  A copy of their memorandum is attached as Exhibit A for ease of reference.  Counsel for Mr. Neev did not personally see the Court's order when it was issued, but had been preparing a motion to remand for lack of subject matter jurisdiction in due course when it learned of the order and memorandum on July 9, 2008. Because Mr. Neev does not assert any procedural defects in the removal, counsel intended to get the motion to remand on file within a reasonable time after removal, and now files this motion.

## IV.  **ARGUMENT**

Remand is appropriate under 28 U.S.C. § 1447(c) if this Court lacks subject matter jurisdiction.  The removing party bears the burden of establishing that removal is proper.  *Emrich v. Touche Ross & Co*., 846 F.2d 1190, 1195 (9th Cir. 1990).  The removal statutes are strictly construed such that any doubts are resolved in favor of remand.  *Gaus v. Miles, Inc*., 980 F.2d 564, 566 (9th Cir. 1992).  In this instance, no subject matter jurisdiction exists because there are no causes of action based on federal law and none of the causes of action based on state law necessarily depend upon patent law.

### A.   For § 1338(a) to Apply, At Least One Cause of Action in the First Amended Complaint Must Necessarily Depend Upon Patent Law

Federal courts have exclusive and original jurisdiction in "any civil action arising under any Act of Congress relating to patents."  28 U.S.C. § 1338(a).  For § 1338(a) jurisdiction to exist, the "well-pleaded complaint [must] establis[h] either that federal patent law creates the cause of action or that the plaintiff's right to relief

4

1   *necessarily depends* on resolution of a substantial question of federal patent law, in

2   that patent law is a *necessary element* of one of the well-pleaded claims." (*See*

3   *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 808-09, 108 S. Ct. 2166,

4   100 L. Ed. 2d 811 (1988)) (emphasis added).

5       Plaintiff's complaint does not plead any causes of action that federal patent

6   law has created and does not raise any of the substantive issues that the Federal

7   Circuit has enumerated as specifically triggering § 1338(a) jurisdiction.[2]

8   Defendants have argued that the second portion of the test applies, but defendants

9   ignore that the requirement is that patent law is a "*necessary element*" cause of

10  action, not just a possible part of a cause of action.

11      It is not sufficient that Neev's complaint alleges a theory under which

12  resolution of a patent-law question is essential. Rather, "[i]f 'on the face of a well-

13  pleaded complaint there are . . . reasons completely unrelated to the provisions and

14  purposes of [the patent laws] why the [plaintiff] may or may not be entitled to the

15  relief it seeks,' then the claim does not 'arise under' those laws. *Thus, a claim*

16  *supported by alternative theories in the complaint may not form the basis for §*

17  *1338(a) jurisdiction unless patent law is essential to each of those theories.*"

18  *Christianson*, 486 U.S. at 810 (quoting *Franchise Tax Bd.*, 463 U.S. at 26, 29).

19      The *Christianson* Court's application of the "necessary element" test to the

20  facts before it is instructive.  In *Christianson,* Colt had asserted in the marketplace

21

22      [2] These enumerated subjects are:  infringement, validity, enforceability,
    inventorship, attorneys fees under 35 U.S.C. § 285, and the revival of an allegedly
23  abandoned application or right to use a continuation to do so.  *Hunter Douglas, Inc. v.
    Harmonic Design*, 153 F.3d 1318, 1330 (Fed. Cir. 1998), *cert. denied*, 525 U.S. 1142
24  (1999), *overruled in part on other grounds in Midwest Indus., Inc. v. Karavan Trailers,
    Inc.*, 175 F.3d 1356 (Fed. Cir. 1999).  None of Neev's causes of action in the First
25  Amended Complaint are based on any of these claims or remedies.  Although Neev
    mentioned in Paragraph 27 of his complaint that he believes defendants are pursuing
26  invalid patents, the First Amended Complaint clearly states that "Neev pleads no cause of
    action based on this paragraph at this time."  (FAC ¶ 27.)  In addition, as the *Christianson*
27  holding so clearly demonstrates, it is not enough for one of these subjects to be implicated,
    or that it be part of a one theory related to a cause of action.  Rather, the patent law subject
28  must be *necessary* to the disposition of the claim.

1   that Christianson had infringed certain of Colt's patents.  Christianson brought a

2   lawsuit in against Colt in a district court located in the Seventh Circuit.  The

3   complaint alleged claims under the Clayton Act and Sherman Act for

4   monopolization and group boycotts, and also contained allegations regarding the

5   validity of Colt's patents.  In the process of hearing a summary judgment motion

6   filed by Christianson, the district court was required to examine the validity of

7   several of Colt's patents.  The district court held in favor of Christianson, and in the

8   process "*invalidated* nine of Colt's patents . . . ."  *Id*. at 806 (emphasis added).

9       Respondent appealed to the Court of Appeals for the Federal Circuit, alleging

10  appellate jurisdiction based, ultimately, on § 1338(a). [3]  The Federal Circuit

11  concluded it lacked jurisdiction and transferred the appeal to the Seventh Circuit.

12  The Seventh Circuit transferred it back, asserting that § 1338(a) jurisdiction

13  required the Federal Circuit hear the case.  *Id.*  The Federal Circuit finally heard the

14  case, and on appeal the Supreme Court considered the issue of appellate

15  jurisdiction, which ultimately is based on § 1338(a).

16      The Supreme Court held that § 1338(a) jurisdiction did not exist.  The Court

17  noted that one element of Christianson's Sherman Act claims clearly was that Colt

18  had asserted invalid patents to further its monopolization.  *Id.*  But the Court went

19  on to note that "[t]he patent-law issue, while arguably necessary to at least one

20  theory under each claim, *is not necessary to the overall success of either claim*."  *Id*.

21  at 826.  Thus, the *Christianson* Court held that it is not enough for a patent issue to

22  be an ingredient of a claim, it must be necessary to the success of the claim for §

23  1338(a) jurisdiction to exist.

24      The "necessarily depends" language has recently been examined in detail in

25

26      [3]   The Federal Circuit has appellate jurisdiction to hear any "appeal from . . . a
    district court . . . if the jurisdiction of that court was based . . . on section 1338."  28 U.S.C.
27  § 1295 (a)(1).  Thus, the ultimate analysis of appellate jurisdiction required an examination
    of the district court's basis for jurisdiction under § 1338(a).  *Christianson*, 486 U.S. 813-
28  14.

1    connection with malpractice cases in which the underlying "case within the case"

2    was a patent litigation.  In two recent cases, the Federal Circuit has considered

3    whether an attorney malpractice claim involving an underlying patent litigation

4    "arises under" federal law for purposes of § 1338(a). *See Air Measurement Techs.,*

5    *Inc. v. Akin Gump Strauss Hauer & Feld, L.L.P.*, 504 F.3d 1262 (Fed. Cir. 2007);

6    *Immunocept, LLC v. Fulbright & Jaworski, LLP*, 504 F.3d 1281 (Fed. Cir. 2007).

7    In *Air Measurement Technologies*, the plaintiffs alleged that defendants' errors in

8    the first litigation forced them to settle for below market value.  504 F.3d at 1266.

9    The complaint contained "seven allegations of error in the context of patent

10   prosecution or patent litigation." *Id*. at 1268. The court considered the "suit within a

11   suit" requirement of the state court claim and held:

12       [T]he district court will *have to* adjudicate, hypothetically, the merits of

13       the infringement claim. Because proof of patent infringement is

14       necessary to show [plaintiff] would have prevailed in the prior

15       litigation, patent infringement is a "necessary element" of [plaintiff's]

16       malpractice claim and therefore apparently presents a substantive

17       question of patent law conferring § 1338 jurisdiction.

18   *Id*. at 1269 (emphasis added). The court noted, however, that *"[i]f there is a theory*

19   *upon which [plaintiffs] can prevail on their malpractice claim that does not involve*

20   *a substantial patent law question, then patent law is not essential to the malpractice*

21   *claim, and § 1338 jurisdiction is lacking*." *Id.* at 1270 (emphasis added; citing

22   *Christianson*, 486 U.S. at 810.)

23       This principal has been applied to remand cases for lack of subject matter

24   jurisdiction where the causes of action do not *require* disposition of some issue of

25   patent law.  In *Eddings v. Glast*, 2008 U.S. Dist. LEXIS 48589, *11 (N.D. Tex. June

26   24, 2008), the district court held that § 1338(a) jurisdiction did not exist because

27   there was one theory upon which the plaintiff could recover for malpractice that was

28   based on a procedural error committed by counsel unrelated to patent law.  The

7

1  court noted that "this theory does not depend on any consideration of patent issues"

2  and remanded the case.  *Eddings v. Glast*, 2008 U.S. Dist. LEXIS 48589, *11 (N.D.

3  Tex. June 24, 2008).  Similarly, in *Taylor v. Kochanowski*, 2008 U.S. Dist. LEXIS

4  20430, *7 (E.D. Mich. Mar. 14, 2008), the court remanded the case after noting that

5  the complaint "alleges that Defendants committed legal malpractice by dismissing a

6  party from the case, inadequately representing him in the claim against Daimler

7  Chrysler, failing to advise him of his right to reinstate his claim against the

8  dismissed party prior to the expiration of the statute of limitations, and failing to

9  advise him of the merits of his common law claims against the dismissed party,"

10  none of which involved patent law.  *Id* *7.

11        To recap, in the context of this motion, it is important to note what the test for

12  subject matter jurisdiction under § 1338(a) *is not*.  The test *is not* a "potential

13  ingredient test."  The fact that a federal patent issue *may* be a potential ingredient in

14  a cause of action is not enough.  The cause of action must "*necessarily depend[ ]*"

15  on some patent law issue, and there can be no scenario in which the cause of action

16  can be decided without determination of patent-related issues.  "[J]ust because an

17  element that is essential to a *particular theory* might be governed by federal patent

18  law does not mean that the *entire . . . claim* 'arises under' patent law.  *Christianson.*

19  486 U.S. at 811 (emphasis added).  In addition, the test *is not* whether a patent or

20  patent application was involved in the underlying dealings between the parties.

21  Many causes of action, including those of patent assignment and ownership and

22  patent licensing, are cases arising under state law unless the scope of the patent

23  claims or the validity of the patent is *necessarily* at issue in those causes of action.[4]

24        Finally, the test is not whether patent laws or regulations may need to be

25

26        _____

        [4]  *See, eg., Schwarzkppf Dev. C. v. Ti-Coating, Inc.*, 800 F.2d 240, 244 (Fed. Cir.
27  1986) (suit for royalties under a license agreement does not trigger § 1338(a); *Beghin-Say Int'l., Inc. v. Ole-Bendt Rasmussen*, 733 F.2d 1568, 1571-72 (Fed. Cir. 1984); *Jim Arnold Corp. v. Hydrotech Sys., Inc.,* 109 F.3d 1567, 1572 (Fed. Cir. 1997); *Speedco, Inc. v.*
28  *Estes*, 853 F.2d 909, 913 (Fed. Cir. 1988) (all involving ownership or assignment).

1   *examined* or discussed in the context of deciding various causes of action. The

2   Federal Circuit has specifically held that the fact that a state cause of action requires

3   examination, discussion or citation of patent-related laws and regulations is not

4   sufficient. In *Kroll v. Finnerty*, 242 F.3d 1359, 1365-1366 (Fed. Cir. 2001), the

5   court noted that although a plaintiff's complaint "require[d] an understanding of"

6   several federal statutes, case law and PTO regulations, that fact was not sufficient to

7   create § 1338(a) jurisdiction. *Id*. at 1365-66.

8

9       **B.      None of Plaintiff's Causes of Action *Necessarily Depends* Upon a**

10      **Question of Patent Law.**

11      Although patent issues may come up in connection with this lawsuit, none of

12  Neev's cause of action "necessarily depends" upon an issue of patent law. This is

13  so for two reasons: (1) Neev's misappropriation, conversion and related claims

14  involve claims of misappropriation of confidential information other than that

15  contained in Neev's patent application and even the claims related to the application

16  do not "necessarily" depend on patent law; (2) Neev's causes of action for breach of

17  contract, quantum meruit, and accounting do not depend upon patent law; (3)

18  Neev's claims for misrepresentation can be won without necessarily depending

19  upon any issue of patent law; and (4) Neev's promissory estoppel claim does not

20  implicate patent law at all.

21      The theme of Neev's First Amended Complaint is the theft of his

22  "Confidential Information," which is defined in his complaint to include his

23  confidential ideas, concepts, invention and information related to treatment of acne.

24  Specifically, in the First Amended Complaint, Neev broke this "Confidential

25  Information" down into three defined components:

26          • The '510 Provisional, which, generally stated, embodied the invention

27              of a device and a method of using it;

28          • The "Invention," which is defined as the invention that the '510

1    Provisional was intended to describe; and

2    • And the "Confidential Intellectual Capital," which was confidential,

3    valuable information that was neither the Invention nor contained in the

4    '510 Provisional itself.

5    Significantly, the third category of property, Confidential Intellectual Capital is by

6    definition *not* the Invention and *not* the '510 Provisional.  Neev described the

7    Confidential Intellectual Capital as follows:

8    *In addition* to sharing the Invention and the '510 Provisional with

9    Defendants, prior to Mr. Neev's disclosure and after that disclosure, Mr.

10   Neev shared with Defendants *know-how and experience* related to the

11   Invention and the '510 Provisional, including the know-how and experience

12   that someone who had spent years considering the Invention and its

13   application, as well as information someone familiar with the art related to

14   the Invention and the '510 Provisional, would possess.  Mr. Neev further

15   shared with Defendants, in confidence, *his plans regarding marketing the*

16   *Invention, including selling the Invention with accompanying treatments.*

17   (Collectively, the know-how, experience, marketing plans and other

18   information Mr. Neev disclosed to Defendants in confidence shall be called

19   the "Confidential Intellectual Capital.").

20   (First Amended Complaint ¶ 16 (emphasis added).)

21       Thus, this Confidential Intellectual Capital included (1) know-how; (2)

22   experience related to the Invention; (3) marketing plans; and (4) "other

23   information").  By definition of the First Amended Complaint in Paragraph 16, none

24   of this information is contained in the '510 Provisional and none of it was the

25   "Invention" claimed in the '510 Provisional.

26

27

28

1
2
3

    **1.**    **Neev's First and Second Causes of Action for Conversion and Misappropriation of Trade Secrets Do Not "Necessarily Depend" Upon Patent Law.[5]**

4          Neev's claims for conversion, misappropriation of trade secrets, breach of

5    implied contract and accounting all turn on whether some form of Confidential

6    Information was wrongfully taken by defendants and used without Neev's

7    permission.  Neev specifically alleges in the First Amended Complaint that

8    defendants did not have such knowledge, Neev conveyed it to them in confidence,

9    and that the defendants misused that Confidential Information.  Each of these causes

10   of action refers to some form of misuse or taking of the "Confidential Information"

11   without proper compensation.  The definition of Confidential Information includes

12   the "Confidential Intellectual Capital," which by definition in Paragraph 16 of the

13   First Amended Complaint does not encompass the Invention or the '510

14   Provisional, but rather other experience, marketing plans and other confidential

15   information related to the product and skin care that Neev provided to defendants.

16   "Trade Secrets" are defined to include information that "[d]erives independent

17   economic value, actual or potential, from not being generally known to the public or

18   to others."  Cal. Civ. Code § 3426.1(d)(1).  Misappropriation of a trade secret occurs

19   when a defendant has acquired the trade secret by "improper means," which may

20   include "misrepresentation" and "breach or inducement of a breach of a duty to

21   maintain secrecy."  Cal. Civ. Code § 3426.1(a).

22          Thus, this case is much like *Lighting Science Group Corp. v. Koninklijke*

23   *Philips Electronics N.V.*, 2008 U.S. Dist. LEXIS 43959 (E.D. Cal. June 3, 2008), in

24   which the U.S. District Court for the Eastern District held that a misappropriation

25   claim that happened to involve patents did not create § 1338(a) jurisdiction.

26

27

28

---

[5] Although it appears that defendants may concede that § 1338(a) jurisdiction is lacking as to these claims, the analysis of them is important because the principals applied in the cases examining conversion and trade secret cases have equal force as to Neev's remaining causes of action.

1   Although the court noted that "the plaintiffs could succeed on these claims by

2   showing the validity or invalidity of the patents under federal law," the court went

3   on to note that "plaintiffs could also succeed on these claims on wholly state

4   grounds, as well." *Id*. at *14.  The court noted that "a court could find that

5   defendants unfairly used plaintiffs['] confidential information . . . without needing

6   to reach the question of whether the patents were lawful or whether infringement

7   occurred.  *Id*. at *15 (citing *Conroy v. Fresh Del Monte Produce, Inc.*, 325

8   F.Supp.2d 1049, 1056 (N.D. Cal. 2004); *Am. Tel. & Tel. Co. v. Integrated Network

9   Corp.*, 972 F.2d 1321, 1324 (Fed. Cir. 1992).  Significantly, the *Lighting Science*

10   court went on to note that "a state court could find that the information at issue was

11   'confidential,' 'proprietary' and a trade secret, without needing to address the

12   question of whether plaintiffs possessed a valid patent to them." *Id*. at *18 (citing

13   *Am. Tel. & Tel. Co.,* 972 F.2d at 1324; *Uroplasty, Inc*., 239 F.3d at 1279-80).

14       Judge Patel in *Altavion* has also examined this issue and reached the same

15   conclusion as the *Lighting Science* court:

16       [P]laintiff may have to show in its prima facie case that the

17       technology in fact "belonged" to or was "owned" by plaintiff. This

18       may require a determination of who "created" or "conceived of" the

19       technology. But "conception of inventions" is not "solely a technical

20       question of patent law," *American Tel. & Tel. Co. v. Integrated*

21       *Network Corp*., 972 F.2d 1321, 1324 (Fed. Cir. 1992), and the fact

22       that a state trade secret and breach of contract action "may involve a

23       determination of the true inventor does not convert that action into

24       one 'arising under' the patent laws," *Consolidated World*

25       *Housewares, Inc. v. Finkle*, 831 F.2d 261, 265 (Fed. Cir. 1987). *See*

26       *also Board of Regents v. Nippon Tel. & Tel. Corp*., 414 F.3d 1358

27       (Fed. Cir. 2005). While the inquiry of who conceived an invention,

28       whether it arises in the context of state trade secret or federal patent

1    law, may involve examination of similar or identical evidence, the

2    inquiry in the two contexts is legally distinct because state trade

3    secret law and federal patent law give rise to different bundles of

4    enforceable rights. In other words, the phrase "conception of an

5    invention" is a term of art carrying different legal connotations and

6    implications depending upon the context in which it arises.

7    *17 to *18.

8    As in *Lighting Science* and *Altavion,* the validity of the '510 Provisional or

9    defendants' applications will not dictate the outcome of the misappropriation and

10   conversion claims.  In addition to the fact that Neev's Confidential Intellectual

11   Capital is not contained within the '510 Provisional at all, the Invention itself was

12   *confidential* at the time Neev revealed it to the defendants.  As in *Lighting Science*,

13   a court could (but would not be obligated to) find that the defendants breached that

14   confidentiality without determining whether the '510 Provisional (or more

15   specifically the non-provisional application that followed it) is valid or invalid.  The

16   state court could also decide whether Neev's Confidential Information was

17   confidential and was misused without determining the validity of the defendants'

18   two pending applications.  Thus, the misappropriation and related claims are clearly

19   not necessarily dependent upon patent law.

20   The same analysis applies to many of the arguments defendants make

21   regarding conversion of the Confidential Information.  For example, defendants

22   contend that the scope of the '510 Provisional will need to be determined before a

23   misappropriation or conversion case can be decided.  This is not so.  Trade secrets

24   are property.  Their existence and value has been determined thousands of times in

25   state courts all over.  The state court can determine the metes and bounds of the

26   Confidential Information without reference to patent law.[6]  Similarly, it is not true

27   _____

28   [6] In that inquiry, the '510 Provisional will serve an evidentiary function,
demonstrating conclusively that Neev possessed the confidential information at least as
early as the date he filed the '510 Provisional, as well as the detailed nature of the

13

1    that application of patent law will be required to determine whether the Confidential

2    Information was "used" by the defendants.  Again, the use or wrongful possession

3    of trade secrets is something state courts do all the time.

4        Similarly, conversion involves the taking of something of value for one's own

5    use without the consent of its owner.  The taking involved in this instance included

6    the Confidential Intellectual Capital, as well as confidential information in the

7    patent.

8        Because one form of conversion and misappropriation involves the

9    Confidential Intellectual Capital and the breach of the confidential basis upon which

10   the Invention was disclosed to the defendants, there are theories upon which Neev

11   can prevail on his claims for conversion and misappropriation of trade secrets

12   without any need to examine patent law, scope of patents (or applications) or any

13   other aspect related to patent law.  These causes of action do not "necessarily

14   depend" on some key issue of patent law, just as the various malpractice claims,

15   although they might depend on patent law issues, did not necessarily depend on

16   them.

17       **2.    Neev's Third, Fourth and Eighth Causes of Action for**

18           **Breach of Implied Contract, Quantum Meruit and**

19           **Accounting Do Not "Necessarily Depend" Upon Patent Law.**

20       Much of the analysis above applies to determining whether Neev's causes of

21   action for Breach of Implied Contract, Quantum Meruit and an Accounting

22   "necessarily depend" upon patent law.  They do not depend on patent law.

23       Breach of implied contract is based upon the principle that the person who

24   can and does convey a valuable idea to one who commercially solicits the service or

25   who voluntarily accepts it knowing that it is tendered for a price should entitled to

26   recover in contract.  *Desny v. Wilder*, 46 Cal.2d 715, 733, 299 P.2d 257 (1956).[7]

27   confidential invention, but that does transmogrify the misappropriation and conversion
     case in to a patent case.

28       [7] This doctrine has been questioned and whittled down over the years, but that

14

1   "[A]n implied-in-fact contract entails an actual contract, but one manifested in

2   conduct rather than expressed in words." *Maglica v. Maglica*, 66 Cal.App.4th 442,

3   455, 78 Cal.Rptr.2d 101 (1998).  Thus, a plaintiff may recover if "the circumstances

4   preceding and attending disclosure, together with the conduct of the offeree acting

5   with knowledge of the circumstances, show a promise of the type usually referred to

6   as "implied" or "implied-in-fact."" *Id.* at 739 (citing *Weitzenkorn v. Lesser*, 40

7   Cal.2d 778, 794-795, 256 P.2d 947 (1953); *Elfenbein v. Luckenbach Terminals*, 111

8   N.J.L. 67, 166 A. 91, 93 (1933).  The recipient must either implicitly agree to the

9   terms by accepting the thing of value after it has been offered for value.  *Id.* at 744.

10  Thus, a contract is formed.  In this instance, Neev alleges that he conveyed the

11  Confidential Information to the defendants, and that the defendants accepted them

12  knowing they were offered for a price.  (FAC ¶ 29.).

13      In light of the allegations, defendants assertion of § 1338(a) jurisdiction fails

14  for two independent reasons.  First, as is discussed above, the "Confidential

15  Information" included information that is not part of the "Invention" or the "'510

16  Provisional," and thus, just like all causes of action in the First Amended

17  Complaint, the cause of action for breach of contract does not "necessarily depend"

18  upon anything even vaguely related to patent law.

19      Second, this is simply a breach of contract action based upon the allegation

20  that defendants accepted the Confidential Information with knowledge that it was

21  offered for a price.  Thus, the claim is analogous to a claim that Neev has licensed

22  or assigned the Confidential Information to defendants and they have failed to pay.

23  Even if the Confidential Information were entirely subsumed within a patent, this

24  claim for breach of contract would not arise under federal law.  See *Beghin-Say*

25  *Int'l, Inc. v. Ole-Bendt Rasmussen*, 733 F.2d 1568, 1571-72 (Fed. Cir. 1984); *Jim*

26  *Arnold Corp. v. Hydrotech Sys., Inc.*, 109 F.3d 1567, 1572 (Fed. Cir. 1997);

27

28  subsequent history is not examined here.  For purposes of this motion, the statement of the
doctrine's contours from *Desny* is sufficient to determine whether it implicates patent law
for purposes of § 1338(a).

1  *Speedco, Inc. v. Estes*, 853 F.2d 909, 913 (Fed. Cir. 1988) (all involving ownership

2  or assignment).

3      Nor does the breach of contract cause of action require that infringement be

4  found, and in fact no infringement can be found in this instance, because there is no

5  issued patent to infringe.  In fact, a cause of action for infringement would be

6  frivolous because it is non-existent, and removal of such a non-existent cause of

7  action would not be possible and a federal court would have no basis for exercising

8  jurisdiction over such a claim.  See *Altavion, Inc. v. Konica-Minolta Sys. Lab., Inc.*,

9  2008 U.S. Dist. LEXIS 37768, *23 (N.D. Cal. May 7, 2008).

10      Finally, to the extent that Neev must show "conception" of the Confidential

11  Information, which includes his Invention, to succeed in his breach of contract

12  cause of action, that is not enough to satisfy § 1338(a).  The same analysis that

13  applies to trade secrets analyses applies here.

14      Quantum meruit refers to the well-established principle that "the law implies

15  a promise to pay for services performed under circumstances disclosing that they

16  were not gratuitously rendered." *Long v. Rumsey*, 12 Cal.2d 334, 342, 84 P.2d 146

17  (1938).  To recover in quantum meruit, a party need not prove the existence of a

18  contract, *Mayborne v. Citizens Trust & Savings Bank*, 46 Cal.App. 178, 182, 188 P.

19  1034 (1920), but it must show the circumstances were such that "the services were

20  rendered under some understanding or expectation of both parties that compensation

21  therefor was to be made."  *Estate of Mumford*, 173 Cal. 511, 523, 160 P. 667

22  (1916); *see Long*, 12 Cal. 2d at 342; *Crane v. Derrick*, 157 Cal. 667, 672, 109 P. 31

23  (1910).  As with all the other causes of action previously discussed, the decision

24  with respect to quantum meruit does not necessarily depend upon patent law.

25  Assigning value to the Confidential Information, determining whether it was given

26  to defendants with the expectation of compensation, and determining whether they

27  used it while it was confidential are all things that are not unique to patent law and

28  will have to be determined in connection with the misappropriation of trade secrets

16

1   case anyway.

2          A cause of action for an accounting is often pleaded in connection with

3   conversion and misappropriation of trade secrets as a potential remedy.  *See, e.g.,*

4   *Am. Credit Indem. Co. v. Sacks*, 213 Cal.App.3d 622, 626 n. 2, 262 Cal.Rptr. 92

5   (1989) (noting the pleading of the claims together; *By-Buk Co. v. Printed*

6   *Cellophane Tape Co.*, 163 Cal.App.2d 157, 161, 329 P.2d 147 (1958) (noting an

7   appeal from a finding of liability for misappropriation of trade secrets and an

8   assessment of damages "to be fixed upon an *accounting* hereinafter to be had");

9   *Reynolds v. Bement*, 36 Cal.4th 1075, 1091, 116 P.3d 1162, 32 Cal.Rptr.3d 483

10  (2005) (noting a complaint containing causes of action for conversion and an

11  accounting); *Southern California First Nat'l Bank v. Quincy Cass Associates*, 3

12  Cal.3d 667, 672, 478 P.2d 37, 91 Cal.Rptr. 605 (1970).  California cases also

13  indicate it is available in conjunction with breach of contract.  *See, e.g.*, *Bendien v.*

14  *Solov*, 89 Cal.App.2d 904, 907, 202 P.2d 372 (1949).

15         An accounting is an action in equity and is a creature of state law.  *Estate of*

16  *Peebles*, 27 Cal.App.3d 163, 166, 103 Cal.Rptr. 560 (1972) (citing *Bates v.*

17  *McTammany*, 10 Cal.2d 697, 700, 76 P.2d 513 (1938); *Taylor v. Sanford*, 203

18  Cal.App.2d 330, 347, 21 Cal.Rptr. 697 (1962)).  Moreover, an accounting may be

19  an appropriate remedy for breach of contract if an accounting of royalties is

20  required.  Although an accounting may also be a remedy for patent infringement, it

21  is also a remedy available under California law, and therefore does not "necessarily

22  depend" upon patent law.  An accounting may be appropriate as a remedy for

23  misappropriation of trade secrets or breach of contract, among other causes of

24  action.

25         **3.     Neev's Fifth and Sixth Causes of Action for Fraud and**

26              **Promissory Fraud Do Not "Necessarily Depend" Upon**

27              **Patent Law.**

28         In an effort to create the impression that Neev's fraud claims are entirely

17

1   focused on the issue of patent ownership, defendants cherry-picked a few of the

2   misrepresentations that Neev asserts in his First Amended Complaint.  There are

3   three problems with defendants' approach.  First, it does not fully describe the

4   misrepresentations alleged.  Second, even the misrepresentations alleged do not

5   hinge on issues of patent law; rather they are factual misrepresentations that

6   happened to relate to patent issues, but do not require the resolution of key patent

7   issues to determine their truth or falsity or the damage they caused.  In such an

8   instance, § 1338(a) jurisdiction does not exist.  Third, even allegations about

9   fraudulently filed applications or a scheme to defraud Neev by filing invalid

10  applications is not sufficient to trigger § 1338(a) jurisdiction anyway, because such

11  claims do not state, in any way, a viable federal cause of action.

12              **a.      Neev Alleges Numerous Misrepresentations That Are**

13                        **Not Patent-Related In Any Way.**

14          Defendants ignore, among others, the following misrepresentations Neev

15  alleged in the First Amended Complaint:

16  •   Prior to Mr. Neev disclosing the Confidential Information to them, the

17      defendants agreed not to disclose the Confidential Information to others

18      without Mr. Neev's consent, and agreed not to use the Confidential

19      Information except as consented to by Mr. Neev.  They did so to get him

20      to disclose the information.  (FAC ¶ 16.)

21  •   The defendants represented to Mr. Neev that they would hold it in

22      confidence.  (FAC ¶ 17.)

23  •   Defendants represented to Neev that he, DaSilva and Choi would

24      each received approximately 1/3 interests in the corporation they

25      were discussing.  (FAC ¶¶ 18, 56.)

26  •   Defendants represented that they would maintain the confidentiality

27      of the Confidential Information and would not use it for commercial

28      purposes without Neev's consent.  (FAC ¶ 56.)

18

1   These misrepresentations are then incorporated, by reference, into each of the

2   Sixth and Seventh Causes of Action.  None of these misrepresentations is in

3   any way based on patent law; rather, they are simply allegations that

4   defendants made false statements and promises, upon which Neev relied to

5   his detriment and damage.  In addition, defendants' misrepresentation that

6   they would maintain the confidentiality of his Confidential Information[8] and

7   that the defendants would maintain the confidentiality of it are not "patent-

8   centric" in any way.  Such misrepresentations would not trigger § 1338(a)

9   jurisdiction even if they were made regarding pending patent applications.

10  Thus, it is quite clear that neither the fraud cause of action nor the promissory

11  fraud cause of action "necessarily depend" upon patent law.

12          **b.      Even Neev's Allegations that Mention the "Invalid**

13          **Applications" Do Not "Necessarily Depend" on Issues**

14          **of Patent Law.**

15          In paragraphs 22, 27 and 51 of his First Amended Complaint, Neev

16  alleges that defendants DaSilva and Choi engaged in a fraudulent scheme to

17  file two applications that included Choi as an inventor.  Neev further alleges

18  that the applications are not valid, but were part of plan to try to misuse

19  Neev's original Confidential Information (including the Invention) or to try

20  to steal it.  Even this allegation does not raise an issue of patent law sufficient

21  to create jurisdiction under § 1338(a).  In *Altavion*, the Court examined

22  similar allegations.  The plaintiff in *Altavion* had alleged misappropriation of

23  trade secrets, and in the context of that claim alleged that the defendants had

24  filed ten fraudulent applications that incorporated the plaintiff's technology.

25  As the defendants do here, the *Altavion* defendants contended that the

26  _____

27  [8]  In their Memorandum, defendants misstate that the allegation is focused only on
    a promise to maintain the confidentiality of the "Invention," in an apparent effort to make
28  it appear as if the allegation does not include within its scope the Confidential Intellectual
    Capital described earlier in the First Amended Complaint.

1  allegations regarding the patent applications created § 1338(a) jurisdiction.

2  The Court disagreed, stating:

3      Defendants' allegedly fraudulent conduct before the USPTO will no

4      doubt be a large part of the proceedings in this action. But the

5      significance of defendants' conduct before the USPTO is not that it

6      forms the exclusive theory upon which plaintiff's claims are based, but

7      rather, that it provides *probative evidence* supporting plaintiff's claims

8      that defendant has unlawfully disclosed and used plaintiff's trade

9      secrets, has breached the parties' contract, and has made false

10      representations to the plaintiff. The mere fact that defendants have

11      filed ten patent applications disclosing various elements of plaintiff's

12      digital stamping technology does not convert this action into one

13      "arising under" the federal patent laws.

14  *Altavion*, *supra*, at *16 (emphasis added).  The same is true here.  In this instance,

15  the fraudulent scheme happened to involve the applications, but the proof (or defeat)

16  of the fraud claims may not hinge on the application of patent law or principals.

17           **c.**    **Neev's Allegations that Mention the "Invalid**

18                   **Applications" Do Not Remotely Raise Viable Federal**

19                   **Question.**

20        Although Neev has alleged that defendants have erroneously and

21  fraudulently stated the inventorship on the Invalid Applications in an effort to

22  further their fraudulent scheme, Neev has not pleaded any claim of patent invalidity

23  or sought correction of inventorship.  In fact, the First Amended Complaint

24  explicitly disclaims any intent to seek such relief or assert such a claim.  (FAC ¶

25  27.)  To the extent such a claim was even pleaded, it still would not create

26  jurisdiction, because there is no such thing as a claim in federal court (or any court)

27  to invalidate a patent application or correct inventorship.  *See Altavion*, *supra*, *22

28  (citing, among other cases, *Eli Lilly & co. v. Aradigm Corp.*, 376 F.3d 1352, 1356

n.1 (Fed. Cir. 2004). Thus there would be no basis for exercising federal jurisdiction anyway.

### 4. Neev's Seventh Cause of Action for Promissory Estoppel Does Not Turn on Patent Law.

In his Seventh Cause of Action for promissory estoppel, in addition to incorporating representations from paragraphs 1-27 of the First Amended Complaint, Neev focuses on the following:

> Defendants promised Mr. Neev that if Defendants used the invention and Confidential Information that Mr. Neev would receive a 34% interest in the company to be formed by Defendants for purposes of exploiting and profiting from use of the invention and Confidential Information, as well as certain other compensation. Defendants further promised to maintain the confidentiality of the invention and Confidential Information and to refrain using the invention and the Confidential Information for commercial purposes unless Mr. Neev consented to their use.

(FAC ¶ 47.) These representations do not relate uniquely to patent law, but rather to the simple representation that someone would be compensated and that certain material would not be used without further consent. As is demonstrated above, they do not "necessarily depend" on any patent law issue and therefore § 1338(a) jurisdiction clearly does not exist as to them.

## V. <u>CONCLUSION</u>

The Supreme Court has warned against the exercise of federal jurisdiction where it might "herald[] a potentially enormous shift of traditionally state cases into federal courts" and where it could "disturb[] any congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons Metal Products, Inc. v. Darue Eng'g. & Mfg.*, 545 U.S. 308, 314, 319, 125 S. Ct. 2363, 162 L. Ed. 2d 257

21

1  (2005).  This case is a misappropriation, conversion and fraud case that happens to

2  involve some patent applications filed by the parties.  To a large extent, the function

3  of those patent applications will be to show as an evidentiary matter that the

4  plaintiff conceived of his trade secret information long before defendants, and that

5  defendants then brazenly and openly took that information for their own use.

6  Neev's claims do not "arise under" the patent laws, and this Court should remand

7  this matter back to state court where it belongs.

8

9  Dated:  July 21, 2008                          TEUTON, LOEWY & PARKER LLP
                                                   KENNETH G. PARKER

10

11                                       By:  /s/ Kenneth G. Parker
                                              Kenneth G. Parker
12                                            Attorneys for Plaintiff

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

1   SALLIE KIM, State Bar No. 142781
    KIMBERLY A. DONOVAN, State Bar No. 160729
2   GCA LAW PARTNERS LLP
    1891 Landings Drive
3   Mountain View, California 94043
    Telephone: (650) 428-3900
4   Facsimile: (650) 428-3901

5   Attorneys for Defendants GEORGE CHOI,
    LUIZ DASILVA, and THERATIVE, INC.,
6   formerly known as DERMACARE, INC.

7                        UNITED STATES DISTRICT COURT

8                       NORTHERN DISTRICT OF CALIFORNIA

9

10  JOSEPH NEEV,                              )   Case No. C-08-02860-PVT
                                              )
11          Plaintiffs,                       )   MEMORANDUM OF POINTS AND
                                              )   AUTHORITIES IN RESPONSE TO
12          vs.                               )   ORDER TO SHOW CAUSE WHY CASE
                                              )   SHOULD NOT BE REMANDED TO
13  DOES 1-100; GEORGE CHOI, an individual,   )   STATE COURT FOR LACK OF
    LUIZ DASILVA, an individual, THERATIVE,   )   JURISDICTION
14  INC., an individual; DERMACARE, INC., a   )
    Delaware corporation;                     )
15                                            )
            Defendants.                       )
16                                            )
    _____    )
17

18

25

20

21

22

23

24

25

26

27

28

                                      Exhibit A

1    **I.    Introduction**

2        Defendants GEORGE CHOI, an individual, LUIZ DASILVA, an individual,

3    THERATIVE, INC., a corporation (formerly known as DERMACARE, INC.), a Delaware

4    corporation (collectively, "Defendants") file this Memorandum of Points and Authorities

5    showing cause why this case should not be remanded to state court for lack of jurisdiction,

6    pursuant to this Court's Order of June 17, 2008.

7        This Court retains jurisdiction over this matter because Plaintiff's right to relief

8    necessarily depends on resolution of several substantial question of federal patent law:

9    inventorship, validity, and claim scope.   Plaintiff, in a highly unusual First Amended

10   Complaint, claims that he revealed "Confidential Information" from his own patent application

11   that he had already filed on a confidential basis with the United States Patent and Trademark

12   Office to Defendants, and that Defendants, unaware that Plaintiff had already filed that patent

13   application, then took that Confidential Information from it and put it in their own patent

14   applications.   Plaintiff also alleges that Defendants, in filing their own patent applications

15   containing Plaintiff's Confidential Information (which included Plaintiff's invention from his

16   own solely-owned patent application), did so by naming a co-inventor who was not an actual

17   co-inventor. Plaintiff alleges that Defendants lied to him when they said that they had filed the

18   two additional patent applications to enhance the protection of his own original patent

25   application. Plaintiff claims that Defendants defrauded him and breached a contract with him

20   for payment by using his invention (which includes material from Plaintiff's patent

21   application) without paying him as Defendants had said they would.

22       Thus, adjudication of the First Amended Complaint, allegedly based on state law,

23   necessarily turn on the construction of a substantial, disputed federal question of federal patent

24   law regarding inventorship, invalidity, and claim scope.  Thus, this case must be adjudicated in

25   this Court rather than in state court.

26   **II.    Statement of Facts**

27       This lawsuit arises out of three patent applications which are attached to the First

28   Amended Complaint:  one for which Plaintiff is listed as the sole inventor and two patent

1

1    applications for which individual Defendants Luiz DaSilva and George Choi are listed as co-

2    inventors, along with Plaintiff. Here, the entire First Amended Complaint revolves around

3    patent related issues. Plaintiff sets forth his qualifications and enumerates all of the patents in

4    which he is named as an inventor or co-inventor. FAC, ¶ 9. He then alleges that he is the

5    inventor of a certain invention as disclosed in the '510 Application and extensively describes

6    and quotes that application. FAC, ¶¶ 10-12. Plaintiff alleges that he revealed his "Invention"

7    from his "confidential" patent application, Application No. 60/615,510 (the " '510

8    Application"), along with some other non-patented but unidentified material, to Defendants.

9    Plaintiff alleges that, despite Defendants' agreement not to use that Invention, they then used

10    that information in their own patent applications and are currently using Plaintiff's invention

11    from his '510 Application in products.

12         Plaintiff claims that Defendants DaSilva and Choi purported to conceive of a new

13    invention but that this invention was already disclosed in Plaintiff's '510 Application and that

14    that Defendants then insisted on filing additional provisional applications (the '740 and '940

15    Applications) with Plaintiff and individual Defendants named as inventors. FAC, ¶¶20-22.

16    Plaintiff contends that Defendants then filed full utility applications without including Plaintiff

17    as an inventor. The issues raised necessarily involve questions of inventorship, claim scope

18    and validity, all of which are core patent law issues that should properly be decided in the

25    federal court.

20         The gravamen of the Third Cause of Action for breach of contract is that Defendants

21    breached a contract with Plaintiff because they agreed not to disclose *or use* Plaintiff's

22    Confidential Information (which includes the invention in the '510 Application) but both

23    disclosed *and used* that Confidential Information. The gravamen of the Fifth Cause of Action

24    for promissory estoppel, and Seventh Causes of Action for "Promissory Fraud" is that

25    Defendants falsely told Plaintiff that they would not disclose or use his Confidential

26    Information (which includes the invention in the '510 Application), but they did both disclose

27    and use it. The Fourth Cause of Action for *quantum meruit* alleges that Defendants are using

28

2

1    Plaintiff's Confidential Information (which includes the invention in the '510 Application) and

2    that they owe him money for that use.

3         The Sixth Cause of Action alleges that Defendants falsely represented that the filing of

4    two patent inventions with three co-inventors (Plaintiff and two individual Defendants) was

5    necessary to enhance the protection of Plaintiff's own patent, but that the allegation was false.

6         Plaintiff claims that he is the sole inventor of an invention called "Treating Skin

7    Disorders with Thermal Energy," with is the subject of the '510 Application. FAC, ¶ 10.

8    Plaintiff claims that the '510 Application contained his "Invention." *Id.* Plaintiff claims that

9    the '510 Application and Invention contained in that '510 Application, combined with other

10   unidentified "know-how, experience, marketing plans and other information" constituted

11   "Confidential Information" that Plaintiff disclosed to Defendants DaSilva and Choi in

12   confidence. FAC, ¶ 16. Plaintiff states:

13

14        Mr. Neev is the sole inventor of the invention "Treating Skin Disorders
          with Thermal Energy," which is the subject of United States Provision

15        Patent Application Number 60/615,510. (The application shall be
          described as the " '510 Provisional"; the invention that Plaintiff Mr. Neev

16        conceived of shall be described as the "Invention.")

17                                    . . .

18        (Collectively, the know-how, experience, marketing plans and other
          information Mr. Neev disclosed to Defendants in confidence shall be

25        called the "Confidential Intellectual Capital.") The '510 Provision, the
          Invention, and the Confidential Intellectual Capital shall be referred to

20        herein as the "Confidential Information."

21   FAC, ¶¶ 10, 16. Thus, Plaintiff's own definition of "Confidential Information" contains both

22   material in the '510 Application and other unidentified "know-how, experience, marketing

23   plans and other information Mr. Neev disclosed to Defendants in confidence."

24        Plaintiff expressly alleges that, at the time he disclosed the '510 Application and the

25   Invention contained in the '510 Application, he had already filed his patent application for that

26   Invention on a confidential basis. *Id.* ¶ 11-15. Plaintiff expressly seeks protection under trade

27   secret law for the material contained in the '510 Application. FAC, ¶ 16.

28

                                        3

1    Plaintiff alleges that, after receiving the Confidential Information, Defendants DaSilva

2    and Choi then prepared their two other Patent Applications (which Plaintiff calls the "Invalid

3    Applications").[1]  The two "Invalid Applications" listed three co-inventors: Plaintiff and

4    individual Defendants DaSilva and Choi. FAC, ¶ 20. Plaintiff claims that he reviewed the

5    "Invalid Applications" before they were filed. *Id.* Plaintiff claims that the two additional

6    patent applications (which Plaintiff refers to as the "Invalid Applications") were based on

7    information already in the '510 Application and did not disclose anything "new or innovative."

8    *Id.* Plaintiff further alleges that the addition of individual Defendant Choi as a co-inventor was

9    "fraudulent" and that he did not know about the inclusion of Defendant Choi . *Id.* ¶ 21.

10    The Sixth Cause of Action for fraud alleges that Defendants represented that the "filing

11    of the Invalid Applications [with Defendants Choi and DaSilva as co-inventors] was for the

12    purposes of enhancing the protection of [Plaintiff's] original invention" but that those

13    representations were false. FAC, ¶ 51. As noted earlier, Plaintiff specifically alleged that

14    listing individual Defendant Choi on the two "Invalid Applications" was a "fraudulent" act.

15    FAC ¶ 21.

16    The Third Cause of Action for breach of implied contract alleges that Defendants

17    accepted Plaintiff's Confidential Information and that they greed to pay "fair value" for it.

18    FAC, ¶ 39. Plaintiff alleges that Defendants have not paid Plaintiff. FAC, ¶ 41.

25    The Fourth Cause of Action for *quantum meruit* alleges that Defendants "continue to

20    use [Plaintiff's] invention and Confidential Information" and that Defendants "owe Mr. Neev

21    the value of the invention and Confidential Information and the value derived from the use of

22    it." FAC, ¶ 44.

23    The Fifth Cause of Action for promissory estoppel alleges that "Defendants further

24    promised to maintain the confidentiality of the invention and Confidential Information and to

25    refrain from using the invention and the Confidential Information[.]" FAC, ¶ 47. Plaintiff

26

27    [1]   Although Plaintiff refers to these two patent applications as the "Invalid Applications," there is no allegation
     that the US PTO or any court of law has ruled on invalidity. For ease of reference to the First Amended
28    Complaint, Defendants will refer to those two patent applications as the "Invalid Applications" but do not
     concede that they are invalid.

4

1    also claims that, "Defendants promised Mr. Neev that if Defendants used the invention and

2    Confidential Information that Mr. Neev would receive a 34% interest in the company . . . ."

3    but that "Defendants have not fulfilled their promises." FAC, ¶¶ 47, 49.

4          The Seventh Cause of Action for promissory fraud contains almost identical allegations

5    about a promise to keep the Confidential Information confidential and not to use it. FAC, ¶

6    56.

7    **III.    Legal Argument**

8          This Court has jurisdiction over this case because adjudication of each of the causes of

9    action requires resolution of substantial issues of federal patent law:  inventorship, validity and

10   claim scope.  This case is distinguishable from Thompson v. Microsoft Corp., 471 F.3d 1288

11   (Fed. Cir. 2006), a case in which the Federal Court was considering whether it had jurisdiction

12   over an appeal and where the plaintiff had acknowledged that "inventorship is 'irrelevant' and

13   'not critical' to the pleaded cause of action." Thompson, 471 F.3d at 1292.

14         Federal courts have exclusive jurisdiction over matters arising out of the patent laws of

15   the United States.  28 U.S.C. § 1338(a).  Federal question jurisdiction based on the patent laws

16   extends "only to those cases in which a well-pleaded complaint establishes either [1] that

17   federal patent law creates the cause of action or [2] that the plaintiff's right to relief necessarily

18   depends on resolution of a substantial question of federal patent law, in that patent law is a

25   necessary element of one of the well-pleaded claims." Christianson v. Colt Operating Corp.,

20   486 U.S. 800, 808-809 (1988).  Since Plaintiff's causes of action are state law torts, federal

21   law did not create these causes of action.  Therefore, the second Christianson prong is the

22   focus of the analysis here.  The Supreme Court later clarified the Christianson test, describing

23   it as a determination whether "a state-law claim necessarily raise[s] a stated federal issue,

24   actually disputed and substantial, which a federal forum may entertain without disturbing any

25   congressionally approved balance of federal and state judicial responsibilities." Grable &

26   Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 314 (2005).  The federalism

27   issues raised by Grable must be considered in evaluating the second Christianson prong.

28

1    The Federal Circuit has specifically ruled that issues of infringement, inventorship,

2    attorney's fees under 35 U.S.C § 285, right to file a revival or continuation in part application,

3    validity, and enforceability are "substantial enough to satisfy the jurisdictional test." Hunter

4    Douglas, Inc. v. Harmonic Design, Inc., 153 F.3d 1318, 1330-31 (Fed. Cir. 1998), cert. denied,

5    525 U.S. 1143 (1999), overruled in part on other grounds by Midwest Indus., Inc. v. Karavan

6    Trailers, Inc., 175 F.3d 1356, 1361 (Fed. Cir. 1999) (citations omitted).  Claim scope has also

7    been held to present a substantial question of patent law.  Immunocept, LLC v. Fulbright &

8    Jaworski, LLP, 504 F.3d 1281, 1285 (Fed. Cir. 2007).

9

10    **A.    Adjudication of the Third, Fourth, Fifth and Eighth Causes of Action**
      **Require the Court to Determine Substantial Federal Questions of Whether**

11    **Defendants Are Using Patented Material**

12         Federal jurisdiction is appropriate for the Third, Fourth, Fifth and Eighth Causes of

13    Action because Plaintiff, to prevail, must show that Defendants are using material contained in

14    Plaintiff's '510 Application and that they listed an inventor that was not a true co-inventor.

15    Analysis of these issues will require analysis of use of the patented material, scope of the '510

16    Application, and inventorship issues.  All of these are federal issues that must be decided in

17    this Court.  As noted above, claim scope and inventorship are federal matters that must be

18    adjudicated in federal court, even as part of state law causes of action.  Immunocept, 504 F.3d

25    at 1285 (claim scope required federal jurisdiction over legal malpractice claim); MCV, Inc. v.

20    King-Seeley Thermos Co., 870 F.2d 1568, 1570 (Fed. Cir. 1989) (section 1338(a) jurisdiction

21    is proper under the second prong of Christianson because a "dispositive issue on the merits

22    would be the definition of the invention," so "relief necessarily depends on resolution of a

23    substantial question of federal patent law" of inventorship); see also RustEvader Corp. v.

24    Cowatch, 842 F.Supp. 171, 173-74 (W.D. Pa. 1993).

25         Patent scope and inventorship issues will also be critical to determination of whether

26    Defendants' ultimate filing of utility applications without the inclusion of Plaintiff as an

27    inventor and alleged inclusion of information disclosed in the '510 Application in Defendants'

28

6

1  products breached any implied contract or otherwise entitles Plaintiff to relief under these

2  causes of action. The scope of the '510 Application will have to be determined as a first step

3  in that analysis. Additionally, inventorship, including application of the rules applicable to

4  determination of proper inventorship for both provisional and utility applications, will have to

5  be considered. As set forth in his complaint, Plaintiff must prove his claims that Defendants

6  did not invent new material that qualified the defendants to be inventors in the "Invalid

7  Applications." Plaintiff must further show that the scope of the '510 Application includes

8  material that was later incorporated into defendants' own utility applications and Defendants'

9  products. These allegations are critical to Plaintiff's case and involve complex issues of patent

10  interpretation and inventorship issues. Thus, resolution of substantial federal patent law will

11  be necessary to resolution of each of these causes of action.

12       Moreover, adjudication of this cause of action will require this Court to examine

13  whether Defendants are using or have used material in the '510 Application – another federal

14  patent issue. The Federal Circuit has ruled in the context of breach of contract that, if such a

15  determination of whether the defendant is using patented material is necessary for the action,

16  federal jurisdiction is appropriate. <u>U.S. Valves, Inc. v. Dray</u>, 212 F.3d 1368 (Fed. Cir. 2000).

17  <u>See also Highland Supply Co. v. Prima Tek II, LLC</u>, 2005 U.S. Dist. LEXIS 38013 (S.D. Ill.

18  2005) (adjudication of state law claim for breach of contract required court to determine

25  infringement). In <u>U.S. Valves</u>, the Court found that there was federal jurisdiction over a state

20  cause of action for breach of a licensing agreement because adjudication of the claim required

21  the court to determine whether the defendant was using patented material, a substantial federal

22  issue. In <u>U.S. Valves</u>, the plaintiff and the defendant entered into a contract in which the

23  defendant was to pay the plaintiff for using the plaintiff's patent. The plaintiff then filed suit

24  to enforce the contract, claiming that the defendant was using patented material but not paying

25  the contracted amount. The Federal Circuit found that, in order for the plaintiff to prevail, it

26  had to show that the defendant was using its patent. <u>Id</u>. at 1371-72. Evaluating "use" of a

27  patent in necessary to the present action and requires determination of significant patent law

28  issues.

7

**B.    Adjudication of the Sixth and Seventh Fraud Causes of Action Requires Analysis of Substantial Federal Questions of Invalidity and Inventorship**

Plaintiff appears to allege the following false statements or acts as a basis for his fraud claims:[2]

1)    Defendants' filing of the "Invalid Applications" was a scheme by Defendants to defraud Plaintiff (FAC, ¶ 22);

2)    Defendants' subsequent full utility applications and PCT application improperly omit Plaintiff and include Defendants Choi and DaSilva as inventors, leading the applications to be fraudulent and invalid (FAC, ¶ 27);

3)    Defendants misrepresented that the filing of the "Invalid Applications" was to enhance the protection of Plaintiff's original invention (FAC, ¶ 51);

4)    Defendants promised Plaintiff that, if Defendants used Plaintiff's Invention, then Plaintiff would receive compensation (FAC, ¶ 56); and

5)    Defendants promised Plaintiff that they would maintain the confidentiality of the Invention and would not use it for commercial purposes without Plaintiff's consent (FAC, ¶56).

Plaintiff must show invalidity of Defendants' two "Invalid Patents" (and possibly the three subsequent full utility applications) to prevail on the fraud causes of action. Additionally, in order for Plaintiff to prove that Defendants made a false statement that they would pay him for the use of his invention in his '510 Application, Plaintiff must prove that Defendants are in fact using the invention in the '510 Application, requiring analysis of patent scope and use. And in order for Plaintiff to prove his claim that Defendants falsely claimed that they would not disclose the invention in the '510 Application, Plaintiff must again show

---

[2] At this time Defendants believe that Plaintiff's fraud causes of action are not alleged with adequate particularity, as required by Rule 9(b) of the Federal Rules of Civil Procedure. Of course, Defendants are not attempting to challenge the pleading at this time by way of this motion. However, the lack of specificity does make it difficult for the Defendants to fully understand the claims that serve as a basis for the fraud claims and therefore to fully brief the specific patent issues necessary to resolution of the claims. Based on the present pleading, Defendants attempt to derive the likely basis for the alleged fraud.

8

1  that he had a patent, the scope of disclosure of that patent, and that Defendants in some manner

2  violated that agreement. See, e.g., Robertson v. Baker Oil Tools, Inc., 2002 U.S. Dist. LEXIS

3  9368 (N.D. Texas 2002) (breach of contract claim based on both confidentiality agreement and

4  licensing agreement turned on substantial federal question of patent law).

5         The Federal Circuit has ruled in the context of proving a false statement that, if

6  substantial issues of federal patent law are implicated, then federal jurisdiction is appropriate.

7  Hunter Douglas, 153 F.3d at 1329-1331 (federal court had jurisdiction over California causes

8  of action for unfair competition, "injurious falsehood," negligence, and interference with

9  prospective economic advantage because plaintiffs were required to prove that patents were

10  defective to prevail on state court causes of action). See also Additive Controls &

11  Measurement Systems, Inc. v. Flowdata, Inc., 986 F.2d 476 (Fed. Cir. 1993) (state court

12  business disparagement claim was properly in federal court because resolution of case turned

13  on a patent question of infringement). In Hunter Douglas, the plaintiff claimed that the

14  defendant made a false statement that the defendants held the exclusive rights to make or sell

15  certain window shades covered by a patent, and the Court found that this raised a substantial

16  issue for federal jurisdiction because, in order to prove that defendant's statement was false,

17  the plaintiff would have to prove that the patent was invalid and unenforceable. 153 F.3d at

18  1329. Here once again, federal patent law must be applied in order to resolve these claims.

25         **C.    This Case is Distinguishable from *Thompson v. Microsoft***

20         Defendants agree that federal jurisdiction cannot be based upon a defense of federal

21  patent preemption, but Defendants here do not base their claim to federal jurisdiction on a

22  defense of federal patent preemption.[3] This case is completely different from Thompson, the

23  case noted in the Order to Show Cause. In Thompson, the only potential federal question was

24  the defense based on federal patent preemption. In Thompson, the plaintiff asserted a cause of

25  action for unjust enrichment, and Microsoft asserted a defense of federal patent preemption.

26

27  _____
   [3]  Defendants reserve their right to challenge the First Cause of Action for conversion and Second Cause of
28  Action for misappropriation of trade secrets on a federal preemption defense, but Defendants do not base their
   claim to federal jurisdiction on the First and Second Causes of Action.

                                                9

1    <u>Thompson</u> acknowledged that "inventorship is 'irrelevant' and 'not critical' to the pleaded

2    cause of action." 471 F.3d at 1292. Here, in contrast, Plaintiff's own affirmative claims

3    necessarily depend on resolution of several questions of federal patent law, including scope,

4    use, inventorship, and validity, as discussed in detail above.

5    **IV.     Conclusion**

6         Based on the arguments and the allegations of the First Amended Complaint,

7    Defendants respectfully contend that federal jurisdiction is appropriate in this Court.

8    Defendants' counsel is available for this Court for oral argument, if this Court wishes to

9    examine this matter further.

10

11   DATED:   July 8, 2008                         GCA LAW PARTNERS LLP

12

13

14                                        By _____
                                               Sallie Kim
15
                                          Attorneys for Defendants GEORGE
16                                        CHOI, LUIZ DASILVA, and
                                          THERATIVE, INC., formerly known as
17                                        DERMACARE, INC.

18

25

20

21

22

23

24

25

26

27

28

10