SALLIE KIM, State Bar No. 142781
KIMBERLY A. DONOVAN, State Bar No. 160729
GCA LAW PARTNERS LLP
1891 Landings Drive
Mountain View, California 94043
Telephone: (650) 428-3900
Facsimile: (650) 428-3901

Attorneys for Defendants GEORGE CHOI,
LUIZ DASILVA, and THERATIVE, INC.,
formerly known as DERMACARE, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JOSEPH NEEV,<br><br>    Plaintiffs,<br><br>vs.<br><br>DOES 1-100; GEORGE CHOI, an individual, LUIZ DASILVA, an individual, THERATIVE, INC., an individual; DERMACARE, INC., a Delaware corporation;<br><br>    Defendants. | Case No. C-08-02860-PVT<br><br>MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND FOR LACK OF SUBJECT MATTER JURISDICTION<br><br>Date: September 9, 2008<br>Time: 10:00 a.m.<br>Location: Courtroom 5, Fourth Floor |

TABLE OF CONTENTS

|   |   | Page No. |
|---|---|---|
| I. | Introduction | 1 |
| II. | Legal Argument | 3 |
| | A. Adjudication of the Third, Fifth and Seventh Causes of Action Requires the Court to Determine Substantial Federal Questions of Whether Defendants Are Using Patented Material | 3 |
| | B. Adjudication of the Sixth Cause of Action For Fraud Requires Analysis of Substantial Federal Questions of Invalidity and Inventorship | 7 |
| | C. This Court Has Supplemental Jurisdiction Over Additional Causes of Action | 12 |
| III. | Conclusion | 12 |

TABLE OF AUTHORITIES

Cases                                                                                                                Page No.

Air Measurement Technologies, Inc. v. North-South Corp.,
    504 F.3d 1262 (Fed. Cir. 2007) ................................................................. 10,11

Altavion, Inc. v. Konica-Minolta Syst. Lab., Inc.,
    2008 U.S. Dist. LEXIS 37768 (N.D. Cal. May 7, 2008) ................................. 10

Beghin-Say Int'l, Inc. v. Ole-Bendt Rasmassen,
    733 F.2d 1568 (Fed. Cir. 1984) .......................................................................... 7

Christianson v. Colt Operating Corp.,
    486 U.S. 800 (1988) ......................................................................................... 12

City of Chicago v. Int'l Coll. Of Surgeons,
    522 U.S. 156 (1997) ......................................................................................... 12

Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.,
    545 U.S. 308 (2005) ......................................................................................... 12

Highland Supply Co. v. Prima Tek II, LLC,
    2005 U.S. Dist. LEXIS 38013 (S.D. Ill. 2005) ................................................... 6

Hunter Douglas, Inc. v. Harmonic Design, Inc.,
    153 F.3d 1318 (Fed. Cir. 1998) cert. denied, 525 U.S. 1143 (1999),
    overruled in part on other grounds,
    Midwest Indus., Inc. v. Karavan Trailers, Inc.,
    175 F.3d 1356 (Fed. Cir. 1999) ........................................................................ 12

Immunocept, LLC v. Fulbright & Jaworski, LLP,
    504 F.3d 1281 (Fed. Cir. 2007) .................................................................. 1,2, 11

Jim Arnold Corp. v. Hydrotech Sys., Inc.,
    109 F.3d 1567 (Fed. Cir. 1997) .......................................................................... 7

Lighting Science Group Corp. v. Kninklijke Philips Electronics N.V.,
    2008 U.S. LEXIS 43959 (E.D. Cal. June 3, 2008) ........................................... 10

Speedco, Inc. v. Estes,
    853 F.2d 909 (Fed. Cir. 1988) ............................................................................ 7

University of West Verginia v. VanVoorhies,

278 F.3d 1288 (Fed. Cir. 2002) .................................................................5, 6, 7

U.S. Valves, Inc. v. Dray,
  212 F.3d 1368 (Fed. Cir. 2000) .................................................................. 6,7

Code and Statutes                                                                    Page No.

28 U.S.C.§ 1367 ...........................................................................................12

GCA Law Partners LLP
1891 Landings Drive
Mountain View, CA 94043
(650)428-3900

## I. Introduction

Significant federal issues exist in this case arise Plaintiff bases his claim on and seeks protection for intellectual property that he allegedly included in the '510 provisional patent application (the " '510 Provisional") and because Plaintiff alleges that, as the fraud, Defendants tricked him into agreeing to being listed as a co-inventor on two additional provisional patent applications (the "Invalid Applications"). Thus, Plaintiff has placed inventorship, validity, and claim scope squarely at issue in this case. Analysis of his claims will require comparison of different patent applications, which creates federal jurisdiction. Having sought the protection of federal patent law, Plaintiff cannot now proceed on his common law claims under state law without adjudication of the following federal patent issues: inventorship, validity, and claim scope. This case is thus different from the many cases cited by Plaintiff in which the defense raised issues of patent law. Here, Plaintiff has created a federal cause of action because he first sought protection from the United States Patent and Trademark Office, and he now seeks so evade federal jurisdiction despite that initial foray into the federal arena.

Plaintiff's own First Amended Complaint alleges -- in the sole factual allegation contained in the Sixth Cause of Action for fraud -- that Defendants tricked him by misrepresenting to him that filing of two Invalid Applications was necessary to protect the rights in his '510 Provisional. Plaintiff alleges that, as a result of the fraud, Defendants added a co-inventor, Mr. Choi, who was not a true co-inventor, and that the filing of the Invalid Applications was not in fact necessary to protect Plaintiff's rights in the '510 Provisional. Plaintiff was listed as a co-inventor on the two Invalid Applications. These are the sole allegations supporting the cause of action for fraud in the Sixth Cause of Action. In order to prove his case, Plaintiff must prove that the filing of the Invalid Applications was improper and not necessary to protect his rights in the '510- Provisional, which requires an analysis of claim scope, inventorship, and invalidity.

The Federal Circuit has held that, "there is § 1338 jurisdiction over state law claims that involve a comparison of patent applications and the proof of invalidity." Immunocept,

1

1  LLC v. Fulbright & Jaworski, LLP, 504 F.3d 1281, 1285 (Fed. Cir. 2007) (citation omitted).
2  That is exactly the case here, where the trier of fact will be required to examine and compare
3  various patent applications to determine whether Plaintiff can prevail.

4  Faced with this dilemma, Plaintiff now attempts to re-write his Sixth Cause of Action
5  for fraud. However, even his second theory of fraud fails, because adjudication of the second
6  theory also requires analysis of substantial issues of federal patent law. Plaintiff's second
7  theory of fraud, which is repeated in his claims for breach of contract (Third Cause of Action),
8  promissory estoppel (Fifth Cause of Action), and promissory fraud (Sixth Cause of Action), is
9  that, in exchange for Plaintiff's bundle of intellectual property (the "Confidential
10 Information") – comprised of intellectual property both contained in his '510 Provisional and
11 not contained in any patent application - Defendants agreed to give Plaintiff 34% of a
12 company using that bundle of intellectual property. Plaintiff alleges that Defendants used his
13 bundle of intellectual property and thus breached an implicit contract with him and are
14 alternatively liable to him for promissory fraud or promissory estoppel, based on the same
15 argument.

16  Plaintiff argues that he can prevail on those causes of action for breach of contract,
17 promissory fraud, and promissory estoppel because part of his bundle of Confidential
18 Information was not contained in any patent or patent application. Thus, Plaintiff argued that
25 he has an alternative theory not based on federal issues. However, Plaintiff's First Amended
20 Complaint contradicts this argument, since the alleged deal or alleged promise was that
21 Defendants would give Plaintiff 34% of the company in exchange for use of all of his
22 Confidential Information. Therefore, in order for Plaintiff to prevail, he must prove not only
23 that Defendants used the non-patent portions of his Confidential Information but also that they
24 used the bundle of Confidential Information in the Invalid Applications and in a product they
25 are currently selling. Thus, for this Court to determine whether Defendants breached a
26 contract (or are liable for promissory fraud or estoppel), this Court must necessarily compare
27 the '510 Provisional and the Invalid Applications, determine scope of claim, and decide
28 whether or not inventorship on the Invalid Applications was appropriate. Adjudication of

2

these causes of action will thus necessarily involve analysis of substantial federal patent issues.

II.     **Legal Argument**

This Court has jurisdiction over this case because adjudication of each of the following causes of action requires resolution of substantial issues of federal patent law: inventorship, validity and claim scope.

> A.    **Adjudication of the Third, Fifth and Seventh Causes of Action Requires the Court to Determine Substantial Federal Questions as to Whether Defendants Are Using Patented Material.**

Federal jurisdiction is appropriate for the Third, Fifth and Seventh Causes of Action because Plaintiff, to prevail, must show that Defendants are using material contained in Plaintiff's '510 Provisional and in the invention disclosed in the '510 Provisional. Adjudication of those causes of action will require this Court to examine claim scope and to compare the products developed and sold by Defendants to the invention disclosed in the '510 Provisional. In essence, Plaintiff claims that he made a contract in which Defendants agreed to use his bundled intellectual property, contained partly in the '510 Provisional (and the invention disclosed therein), for 34% of the company based on that technology.[1] Plaintiff's claim is *not* that Defendants agreed to give him 34% of the company for use of only the material not contained in the '510 Provisional, but that they agreed to do so for all of his technology – for this complete and indivisible "bundle of rights." FAC ¶¶ 18, 47 (Fifth Cause of Action), 56 (Seventh Cause of Action). Moreover, Plaintiff specifically alleges that Defendants are in fact using his intellectual property from his '510 Provisional and the invention disclosed therein. FAC, ¶¶ 19, 20. Plaintiff also specifically alleges that "Defendants chose to develop, market and sell a device and complementary products that was derived from and embodied the Invention and the Confidential Intellectual Property" and that Defendants' "device itself is sold with the complementary 'acne ointment' Mr. Neev disclosed in the '510 Application." FAC ¶ 25.

---

[1] Plaintiff's causes of action for Promissory Estoppel, the Fifth Cause of Action, and Promissory Fraud, the Seventh Cause of Action, are also based on this same theory.

3

Plaintiff's argument that he can prevail in his suit simply by showing that Defendants used only the part of his technology that was not contained in the '510 Provisional is without merit. Plaintiff is bound by his own First Amended Complaint, which clearly explains that the alleged contract between Plaintiff and Defendants was for Plaintiff to receive 34% of the company in exchange for the use of the "Confidential Information." FAC, ¶ 16 – 18. That "Confidential Information" includes material in "[t]he '510 Provisional, the Invention, [disclosed therein] and Confidential Information [consisting of know-how, experience and marketing plans for the Invention." FAC, ¶ 16; see also Opening Memo. at 1: 27 – 2: 5. In other words, Plaintiff himself alleges a "package" deal: Defendants would give him 34% of the company in exchange for use of all of his allegedly Confidential Information. There is no separation between the material in the '510 Provisional and not contained in it. There is no written agreement or allegation of an oral agreement that use of even a portion of the Confidential Information by the Defendants required them to give Plaintiff 34% of the company. Instead, Plaintiff alleges that the Defendants "promised Neev that he would receive an approximately 1/3 interest in a corporation to be formed to create a product and marketing plan based on the Confidential Information." Opening Memo. at 3: 19-21. This providing of the 1/3 interest was not based solely on the use of the material outside of the '510 Provisional. To argue that Defendants owe him 34% of the company for using only a portion of the bundle – such as the marketing plan - is not only absurd but is also contrary to Plaintiff's allegation. The only portions of Confidential Information that Defendants are allegedly using are contained in the '510 Provisional. FAC, ¶ 25.

Thus, for Plaintiff to prove his claims for breach of contract, promissory estoppel and promissory fraud (that he was entitled to 34% the company), he must show that Defendants actually used his Confidential Intellectual Capital, which, by his own definition, contains material in the '510 Provisional. Plaintiff cannot, by his own First Amended Complaint, win on this claim unless he shows improper or unauthorized use of the material in the '510 Provisional.

4

1    In an effort to avoid federal jurisdiction, Plaintiff may attempt to claim that he can
2    prevail on his breach of contract argument if he shows that Defendants had *access* to his
3    Confidential Information, even if they did not use it. His own First Amended Complaint,
4    though, defeats this argument. Plaintiff specifically alleges that the contract or promise by
5    Defendants was that they would give Plaintiff 34% of the company if the company "used" the
6    bundle of Confidential Information. FAC, ¶ 47 and 56 ("Defendants promised Mr. Neev
7    that[,] if Defendants used the invention and Confidential Information[,] that [sic] Mr. Neev
8    would receive a 34% interest in the company[.]") (identical allegations). See also FAC, ¶ 25
9    (allegation that Defendants, "having used Mr. Neev's Confidential Information . . .
10   successfully marketed and told their ThermaClear product[.]"); ¶ 26 ("Defendants have . . .
11   used Mr. Neev's Confidential Information").

12   This is not a situation where Plaintiff has alleged alternate theories, only one of which
13   requires state law issues to prevail. That is the case in the majority of cases cited by Plaintiff,
14   where the plaintiffs in those cases cited alternate theories – one with federal patent issues and
15   one with only state law issues. Those cases are distinguishable because, in this case, the
16   alleged promise was for the use of the entire package of Confidential Information and not just
17   the non-patent portions. Here, Plaintiff has not alleged a single state law "theory" that is
18   devoid of any substantial patent law questions.

25   Determination of Plaintiff's Third, Fifth and Seventh Causes of Action requires an
20   analysis of the scope of disclosure in the '510 Provisional, because Plaintiff alleges that
21   Defendants used his Confidential Information in the Invalid Applications. Thus, in order for
22   Plaintiff to prove that Defendants are using his Confidential Information, he must show that
23   the Invalid Applications are in fact invalid. In order to determine whether Defendants are
24   using Plaintiff's Confidential Information, this Court must compare the '510 Provisional to the
25   Invalid Applications. This situation is very similar to the situation in University of West
26   Virginia v. VanVoorhies, 278 F.3d 1288 (Fed. Cir. 2002). In that case, the plaintiff alleged
27   that the defendant breached his agreement with the plaintiff, his former employer, to assign all
28   inventions first conceived of or reduced to practice during employment to his employer, and

the plaintiff specifically alleged that the defendant filed a later patent that was a continuation in part of a previous patent that the defendant had assigned properly to his former employer while he was employed. Id. at 1292-1293. In order to determine the breach of contract, fraud, and breach of fiduciary duty claims, the Court was required to compare the later patent application to the previous one to determine whether the later one was a "continuation-in-part" of a previous patent. Id. at 1295. Thus, the Court was required to examine the scope of claims and compare two patent applications in order to determine if the defendant was liable to the plaintiff. Id. at 1294-1295. Here, similarly, the trier of fact will be required to examine the Invalid Applications and compare them to Plaintiff's '510 Provisional to determine whether Defendants breached a contract or are liable for promissory estoppel or promissory fraud.

The Federal Circuit, consistent with the ruling in University of West Virginia, has held that a state law claim for breach of contract belongs in federal court where the case turns on a patent issue. See, e.g., U.S. Valves, Inc. v. Dray, 212 F.3d 1368 (Fed. Cir. 2000) (adjudication of a claim for breach of a licensing agreement required the court to determine whether the defendant was using patented material, a substantial federal issue, justifying federal jurisdiction); Highland Supply Co. v. Prima Tek II, LLC, 2005 U.S. Dist. LEXIS 38013 (S.D. Ill. 2005) (same). The Federal Circuit reached this ruling in U.S. Valves despite the fact that many patent licensing cases belong in state court. Many cases belong in state court, even if they involve federal patents, because the issues in dispute do not turn on interpretation of federal patent law. However, where, as here, the actual issues to be litigated necessarily involve analysis of substantial issues of federal patent law, the case belongs in federal court.

In adjudicating Plaintiff's First Amended Complaint, this Court will be required to review both the '510 Provisional and compare it to the Invalid Applications and any use by Defendants to determine whether the Invalid Applications and Defendants' products are within the scope of the invention disclosed in the '510 Provisional. Moreover, since Plaintiff himself alleges that he was listed as a co-inventor on the Invalid Applications that he allegedly reviewed and that he agreed to be a co-inventor only based on Defendants' fraud, this Court must review the entire process of making the Invalid Applications, compare them to the '510

6

Provisional, and determine whether the Invalid Applications were appropriate. Accordingly, federal jurisdiction is proper.

Plaintiff's conclusory argument that a claim for breach of a contract based on a licensing agreement for patents does not fall within federal jurisdiction is also meritless. Plaintiff ignores the most recent Federal Circuit authority on this point (University of West Virginia and U.S. Valves, cited above) and erroneously relies on three cases that pre-date those two cases. All three cases cited by Plaintiff are distinguishable assignment cases where adjudication of the issues did not involve resolution of any federal patent issues. In Beghin-Say Int'l, Inc. v. Ole-Bendt Rasmussen, 733 F.2d 1568, 1570-1572 (Fed. Cir. 1984), a party asked the court to find that a contract for assignment of patents was "valid," and there were no patent issues to examine. There were no allegations of invalidity, fraud on the PTO, or infringement. Id. at 1570. Similarly, Jim Arnold Corp. v. Hydrotech Sys., Inc., 109 F.3d 1567, 1572 (Fed. Cir. 1997) was a case which involved an assignment of a patent. The Court explained that the question of "who owns the patent rights and on what terms" is reserved for the state courts. Id. at 1572. Here, Defendants do not base federal jurisdiction on the issue of ownership of any patents. Finally, Speedco, Inc. v. Estes, 853 F.2d 909, 913 (Fed. Cir. 1988), also addresses an assignment and the plaintiff's attempt to gain "court approval to pay [the assignor] less [money]." Id. at 911. In Speedco, the party seeking federal jurisdiction did not challenge invalidity or infringement. Id. Here, federal jurisdiction is not based on the limited issue of ownership of a patent, assignment itself, or payment issues. Rather, the central issues here will require the trier of fact to examine and compare patent Provisionals to determine the scope of claim for the different provisional patents and applications at issue.

**B.    Adjudication of the Sixth Cause of Action for Fraud Requires Analysis of Substantial Federal Questions of Invalidity and Inventorship**

Plaintiff's Sixth Cause of Action for Fraud requires this Court to consider invalidity, inventorship, and claim scope. Although Plaintiff complains that Defendants have "cherry-picked" certain allegations to support federal allegation, Defendants only reviewed the First Amended Complaint to quote the factual allegations underlying the claim for Fraud in the

7

Sixth Cause of Action. The Sixth Cause of Action for Fraud is contained in paragraphs 50- 54 of the First Amended Complaint, and Plaintiff specifically alleges in paragraph 51:

> Defendants represented to Mr. Neev that filing of the Invalid Applications was for the purposes of enhancing the protection of Mr. Neev's original invention. In truth, Mr. Neev is informed and believes that Defendants misrepresentations were false and that Defendants were conspiring to defraud Mr. Neev out of the Invention and the Confidential Information.

FAC, ¶ 51. That is the sole allegation of a misrepresentation in this section for fraud. Plaintiff also alleges in the First Amended Complaint that "[t]he addition of Choi was not known to Mr. Neev at the time DeSilva filed the Invalid Applications and was a fraudulent act by DaSilva and Choi" and that Defendants' filing of the "Invalid Applications" was a scheme by Defendants to defraud Plaintiff. FAC, ¶¶ 21 - 22. Those allegations are completely consistent with the sole allegation of fraud in the Sixth Cause of Action, and they appear to be the only allegations that serve as a basis for Plaintiff's fraud claim.[2] Because Plaintiff's sole allegation contained in the section labeled as the Sixth Cause of Action for Fraud is that the fraudulent act itself was a misrepresentation about the Invalid Applications, Plaintiff must prove that the statements about the Invalid Applications were false, in order to prevail.

Plaintiff further sets forth the factual basis for his claim that Defendants misrepresented the need for filing of the Invalid Applications in paragraph 20 of the First Amended Complaint. Plaintiff alleges that Defendant Mr. DaSilva insisted that they file the new provisional applications, which became the "Invalid Applications," and Mr. DaSilva provided the applications to Plaintiff for review. Plaintiff alleges that the Invalid Applications "do not disclose anything new or innovative." Instead, Plaintiff contends, the Invalid Applications only disclosed information that was in the '510 Provisional or that would be known to one skilled in the art based on other information or by combining known art. Plaintiff also alleges

---

[2] Defendants maintain that Plaintiff has not plead his fraud claim with adequate specificity, as required under Rule 9(b) of the Federal Rules of Civil Procedure. California state court also requires fraud to be plead with specificity. However, the only places where the word "fraud" or any derivative of it appears is in paragraphs 21, 22 and 27 and in the section labeled 'SIXTH CAUSE OF ACTON, FRAUD" in paragraphs 50-54.

that the Invalid Applications contained ideas that were disclosed in other unidentified patent applications that Plaintiff filed in May 2000 and May 2002. FAC, ¶ 19.

To adjudicate this Sixth Cause of Action, this Court will be forced to examine the Invalid Applications and determine whether their filing was false – involving issues of inventorship, fraud on the U.S. PTO, and analysis of and comparison of various patent applications. Again, this Court will be required to compare the Invalid Applications with the '510 Provisional and determine whether the Invalid Applications were in fact necessary to enhance the protection of the '510 Provisional, whether they disclosed the same invention, and whether inventorship was proper.

Despite the fact that this is the sole allegation contained in the "Fraud" Cause of Action, Plaintiff claims that the fraud allegations are based on other allegations. Plaintiff attempts to re-write the First Amended Complaint – after having been given a chance to amend once before. Plaintiff appears to base his new Sixth Cause of Action for Fraud on the same arguments raised in the Seventh Cause of Action for "Promissory Fraud." Plaintiff argues that he has alternate theories of fraud that allow him to prevail on a claim for fraud. However, the four new theories of fraud alleged on pages 18 and 19 of the Opening Memorandum actually boil down to one theory: that Defendants, in exchange for use of the bundle of rights of Plaintiff's Confidential Information, agreed to give him 1/3 of the company. That theory, for the reasons set forth above in Section A, require adjudication of patent issues. In other words, Plaintiff is attempting to merge the Sixth and Seventh Causes of Action, which are based on different theories, to avoid federal jurisdiction. This Court should not allow Plaintiff to re-write the First Amended Complaint to merge the Sixth and Seventh Cause of Action or to allow Plaintiff to re-write the Sixth Cause of Action.

Regardless, both of Plaintiff's alternating theories of fraud implicate the two sets of patent-related activities: Plaintiff's own '510 Provisional and the Invalid Applications, on which Plaintiff and others were listed as co-inventors. This case is distinguishable from the

9

1  cases cited by Plaintiff where courts remanded to state court because, here, Plaintiff himself
2  repeatedly chose to seek the protection of the U.S. PTO. In none of those cases cited by
3  Plaintiff were the patents at issue ones in which the plaintiff was named as an inventor. Those
4  cases all addressed situations where the defendants allegedly stole trade secrets and then put
5  them in the defendants' own patents. This case is completely different, because Plaintiff is a
6  co-inventor on all of the patent applications at issue.

7  For example, in Altavion, Inc. v. Konica-Minolta Syst. Lab., Inc., 2008 U.S. Dist.
8  LEXIS 37768 (N.D. Cal. May 7, 2008), the defendants removed a case for misappropriation of
9  trade secrets to federal court, claiming that the plaintiff would be forced to show that the
10 defendants were not the true inventors of a patent to prove its claim for fraud. There, unlike
11 here, the plaintiff did not claim protection for intellectual property which was the subject of
12 any patent activity, and the plaintiff in Altavion did not claim fraud based on patent
13 applications in which the plaintiff was named as a co-inventor. Thus, there was no comparison
14 of applications in Altavion, as there is here.

15 Additionally, in Lighting Science Group Corp. v. Kninklijke Philips Electronics N.V.,
16 2008 U.S. LEXIS 43959 (E.D. Cal. June 3, 2008), the only patents at issue were ones
17 defendants owned. The Court remanded the case in which the plaintiff alleged unfair
18 competition based on alleged unfair patent prosecution by the defendant because a "court
25 could find that defendants' filing of a suit in those circumstances was 'unfair" under the UCL,
20 without considering the validity of the patents themselves," and there was no need for
21 comparison of various patent applications, as required here.

22 Plaintiff argues that there is no federal jurisdiction over this matter because neither
23 Plaintiff nor Defendants could craft an independent cause of action for inventorship or
24 infringement, since no patent was issued based on the '510 Provisional. However, Plaintiff
25 misapprehends the test. The test for jurisdiction is not whether a party can craft a free-
26 standing federal patent claim, but whether the cause of action necessarily depends on an
27 interpretation of a substantial question of federal patent law. To illustrate this point, this Court
28 need only review two cases from the Federal Circuit, cited by Plaintiff: Air Measurement

10

Technologies, Inc. v. North-South Corp., 504 F.3d 1262 (Fed. Cir. 2007) and Immunocept, 504 F.3d at 1285.

In both of those cases, the Federal Circuit ruled that there was federal jurisdiction over claims for attorney malpractice because, in order to determine whether the attorneys had committed malpractice, the courts would necessarily have to determine patent issues. The Federal Circuit's decision in Air Measurement did not turn on whether a case for infringement or inventorship could be brought independently in federal court but rather turned only on the question of whether adjudication of the cases would require the court to "adjudicate, hypothetically, the merits of the infringement claim." Air Measurement, 504 F.3d at 1269. Even though the ability to bring the same patent infringement claim had obviously long since passed, the Federal Circuit held that, simply because adjudication of the case would require analysis of the already-litigated infringement claim (that no one could possibly bring again), federal jurisdiction existed. The Federal Circuit did not discuss whether a party could bring such a patent infringement case again, because that is not the test. Even though the plaintiff in Air Measurement could not bring a patent infringement case at the time of the case for malpractice was filed, the Court held that federal jurisdiction existed over that malpractice claim because adjudication of that matter required an examination of the already-litigated patent infringement case.

Similarly, in Immunocept, the Federal Circuit held that a case of legal malpractice which required a determination of claim scope belonged in federal court. 504 F.3d at 1285. In Immunocept, there was no discussion of whether any party could independently litigate the issue of claim scope in federal court – merely that analysis of claim scope was required and thus conferred federal jurisdiction.

Defendants agree that Plaintiff cannot prosecute a claim for inventorship for patents that have not issued. However, if Plaintiff's state court claims necessarily require an analysis of the scope of patents or evaluation of inventorship or validity, then those state law claims belong in this Court whether or not Plaintiff can independently prosecute such a claim. The holdings of Air Measurement and Immunocept are clear that there is no independent

11

requirement that a federal court have the ability to adjudicate a claim for patent infringement or inventorship in order to find that federal jurisdiction exists.

The rule from Christianson v. Colt Operating Corp., 486 U.S. 800 (1988) requires this result, because federal jurisdiction exists if "patent law is a necessary element of one of the well-pleaded claims." 486 U.S. at 908. Christianson did not hold that the federal court would be required to have the procedural ability to try an independent cause of action under patent law – merely that the resolution of the case required interpretation of patent law. The Supreme Court later elaborated on this test in Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308 (2005), by stating that the question is whether a "state-law claim necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." 554 U.S. at 314. Here, the patent issues are necessary to the resolution of the breach of contract, fraud, promissory fraud and promissory estoppel causes of action, and they are substantial (inventorship, claim scope, and invalidity)[3] and disputed.

### C. This Court Has Supplemental Jurisdiction Over Additional Causes of Action.

Defendants do not base their removal to this Court on the First Cause of Action for conversion or the Second Cause of Action for Misappropriation of Trade Secrets. This Court can assert supplemental jurisdiction over those claims and any other state law claims for which there is no independent federal jurisdiction. 28 U.S.C. § 1367. See also City of Chicago v. Int'l Coll. of Surgeons, 522 U.S. 156, 165 (1997).

### III. Conclusion

Based on the arguments and the allegations of the First Amended Complaint, Defendants respectfully contend that federal jurisdiction is appropriate in this matter.

---

[3] All of these issues are substantial issues. Hunter Douglas, Inc. v. Harmonic Design, Inc., 153 F.3d 1318, 1330-31 (Fed. Cir. 1998), cert. denied, 525 U.S. 1143 (1999), overruled in part on other grounds by Midwest Indus., Inc. v. Karavan Trailers, Inc., 175 F.3d 1356, 1361 (Fed. Cir. 1999) (citations omitted)

12

| | |
|---|---|
| DATED:  August 19, 2008 | GCA LAW PARTNERS LLP<br><br>By _/s/ Sallie Kim_<br>          Sallie Kim<br><br>Attorneys for Defendants GEORGE CHOI, LUIZ DASILVA, and THERATIVE, INC., formerly known as DERMACARE, INC. |

---

(infringement, inventorship, right to file a revival or continuation in part application, validity and enforceability); Immunocept, 504 F.3d at 1285 (claim scope).

13