1    KENNETH G. PARKER (SBN 182911)
       kparker@tlpfirm.com
2    ROBERT G. LOEWY (SBN 179868)
       rloewy@tlpfirm.com
3    TEUTON, LOEWY & PARKER LLP
     3121 Michelson Drive, Suite 250
4    Irvine, California 92612
     Telephone:   (949) 442-7100
5    Facsimile:    (949) 442-7105

6    Attorneys for PLAINTIFF

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA,

SAN JOSE DIVISION

| | |
|---|---|
| JOSEPH NEEV, an individual,<br><br>Plaintiffs,<br><br>vs.<br><br>GEORGE CHOI, et al.,<br><br>Defendants. | Case No. C 08-2860 PVT<br><br>**PLAINTIFFS' REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO REMAND MATTER FOR LACK OF SUBJECT MATTER JURISDICTION**<br><br>Date:      September 9, 2008<br>Time:     10:00 a.m.<br>Place:    Courtroom 5<br>            4th Floor<br>            280 South First Street<br>            San Jose, California 95113 |

PLAINTIFF'S REPLY        C 08-2860 PVT

## **MEMORANDUM OF POINTS AND AUTHORITIES**

### **I.   PRELIMINARY STATEMENT**

Defendants concede that the first, second, fourth and eighth claims do not arise under patent law, focusing on plaintiff's third claim for breach of contract and his sixth and seventh claims for fraud and promissory fraud, respectively.  As to these claims, defendants lump all the facts together and contend that the facts cannot be considered in the alternative or separately, and further contend that alternative theories of liability cannot exist.  This position is directly contrary to holdings requiring that this Court examine whether alternative theories that do not arise under patent law support a particular cause of action.

Defendants also choose to ignore allegations that are incorporated by reference into claims.  They argue without support, that somehow incorporation of allegations is not effective when it comes to examining the pleadings for purposes of determining jurisdiction.  This argument is directly in contravention of common sense and Rule 10(c) of the Federal Rules of Civil Procedure, which expressly allows incorporation by reference.

### **II.   ARGUMENT**

Defendants do not dispute that for § 1338(a) jurisdiction to exist in this case the "well-pleaded complaint [must] establis[h] . . . that the plaintiff's right to relief *necessarily depends* on resolution of a substantial question of federal patent law, in that patent law is a *necessary element* of one of the well-pleaded claims." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 808-09, 108 S. Ct. 2166, 100 L. Ed. 2d 811 (1988)) (emphasis added).  Nor do they dispute case law holding that "a claim supported by alternative theories in the complaint may not form the basis for § 1338(a) jurisdiction unless patent law is *essential* to *each* of those theories." *Christianson*, 486 U.S. at 810 (emphasis added; quoting *Franchise Tax*

1    *Bd.*, 463 U.S. at 26, 29). Moreover, defendants do not dispute that the removal
2    statutes are strictly construed such that any doubts are resolved in favor of remand.
3    *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992).
4          Defendants' main approach is to ignore the basic law and try to "lump
5    together" the facts upon which plaintiff may recover under his breach of contract
6    and fraud theories. But this "lumping together" of the facts is clearly inappropriate,
7    as is demonstrated by the *Christianson* holding described in detail in plaintiff's
8    opening papers, as well as the holdings in *Eddings v. Glast*, 2008 U.S. Dist. LEXIS
9    48589, *11 (N.D. Tex. June 24, 2008) and *Taylor v. Kochanowski*, 2008 U.S. Dist.
10    LEXIS 20430, *7 (E.D. Mich. Mar. 14, 2008), analyzed in plaintiff's moving
11    papers.
12          Again, in the context of this motion, it is important to note what the test for
13    subject matter jurisdiction under § 1338(a) *is not*. The test *is not* a "potential
14    ingredient test." The fact that a federal patent issue *may* be a potential ingredient in
15    a cause of action is not enough. "[J]ust because an element that is essential to a
16    *particular theory* might be governed by federal patent law does not mean that the
17    *entire . . . claim* 'arises under' patent law. *Christianson.* 486 U.S. at 811 (emphasis
18    added). In addition, the test *is not* whether a patent or patent application was
19    involved in the underlying dealings between the parties. Finally, the test is not
20    whether patent laws or regulations may need to be *examined* or discussed in the
21    context of deciding various causes of action. The Federal Circuit has specifically
22    held that the fact that a state cause of action requires examination, discussion or
23    citation of patent-related laws and regulations is not sufficient. In *Kroll v. Finnerty*,
24    242 F.3d 1359, 1365-1366 (Fed. Cir. 2001), the court noted that although a
25    plaintiff's complaint "require[d] an understanding of" several federal statutes, case
26    law and PTO regulations, that fact was not sufficient to create § 1338(a)
27    jurisdiction. *Id*. at 1365-66.
28

### A. Defendants Do Not Dispute that The Confidential Intellectual Capital Is Not Dependent Upon the Inventions or Patent Law Issues.

Defendants do not dispute that the Confidential Intellectual Capital is not dependent upon an examination of paten law or patent issues. Neev described the Confidential Intellectual Capital as follows:

> *In addition* to sharing the Invention and the '510 Provisional with Defendants, prior to Mr. Neev's disclosure and after that disclosure, Mr. Neev shared with Defendants *know-how and experience* related to the Invention and the '510 Provisional, including the know-how and experience that someone who had spent years considering the Invention and its application, as well as information someone familiar with the art related to the Invention and the '510 Provisional, would possess. Mr. Neev further shared with Defendants, in confidence, *his plans regarding marketing the Invention, including selling the Invention with accompanying treatments.* (Collectively, the know-how, experience, marketing plans and other information Mr. Neev disclosed to Defendants in confidence shall be called the "Confidential Intellectual Capital.").

(First Amended Complaint ¶ 16 (emphasis added).)

Nor do defendants dispute that this Confidential Intellectual Capital included (1) know-how; (2) experience related to the Invention; (3) marketing plans; and (4) "other information"). By definition of the First Amended Complaint in Paragraph 16, none of this information is contained in the '510 Provisional and none of it was the "Invention" claimed in the '510 Provisional.

**B.   Neev's Third Cause of Action for Breach of Implied Contract Does Not "Necessarily Depend" Upon Patent Law.**

Breach of implied contract is based upon the principle that the person who can and does convey a valuable idea to one who commercially solicits the service or who voluntarily accepts it knowing that it is tendered for a price should entitled to recover in contract. *Desny v. Wilder*, 46 Cal.2d 715, 733, 299 P.2d 257 (1956). The recipient must either implicitly agree to the terms by accepting the thing of value after it has been offered for value. *Id*. at 744. Thus, a contract is formed. In this instance, Neev alleges that he conveyed the Confidential Information to the defendants, and that the defendants accepted them knowing they were offered for a price. (FAC ¶ 29.).

Defendants assert two arguments to support § 1338 jurisdiction. First, they argue that *all* of the Confidential Information must have been "stolen" or "used" for a breach to have occurred, using a "bundle of sticks" analogy. Second, they contend that "in order to determine whether Defendants are using Plaintiff's Confidential information," the Court must construe the '510 Provisional. Neither of these are correct.

First, the implied promise, as alleged in the third claim, was to pay Neev the "value" of what defendants used. Nothing in the claim supports defendants' argument that defendants must have used *all* of the Confidential Information to trigger a breach. In fact, to establish a breach of contract, all one must establish is the breach of a promise. In this case, any material use of any of the Confidential Information would constitute a breach. "A contract is an agreement to do or *not to* do a certain thing." Cal. Civ. Code § 1549 (emphasis added). In this instance, the alleged contract was to *not* use any of the Confidential Information without compensating Plaintiff. In this case, a breach can be shown by showing the use of any of the Confidential Information by defendants, including simply by showing use of the Confidential Intellectual Capital alone. It is clear that plaintiff could succeed

1  on the breach of implied contract claim without implicating some key issue of
2  patent law.
3     In addition, the fact that the other confidential information may have
4  been used would not be enough to cause the breach of contract claim to
5  arise under patent law anyway.  As in *Altavion, Inc. v. Konica-Minolta Sys.*
6  *Lab., Inc.*, 2008 U.S. Dist. LEXIS 37768 (N.D. Cal. May 7, 2008), the fact
7  that the "property" provided to defendants was contained in a patent
8  application is not enough.  In *Altavion,* the Court noted that its analysis
9  applied not just to trade secrets claims but also to breach of contract actions:
10      [T]he fact that a state trade secret and breach of contract action "may
11      involve a determination of the true inventor does not convert that
12      action into one 'arising under' the patent laws," *Consolidated World*
13      *Housewares, Inc. v. Finkle*, 831 F.2d 261, 265 (Fed. Cir. 1987). *See*
14      *also Board of Regents v. Nippon Tel. & Tel. Corp.*, 414 F.3d 1358
15      (Fed. Cir. 2005). While the inquiry of who conceived an invention,
16      whether it arises in the context of state trade secret or federal patent
17      law, may involve examination of similar or identical evidence, the
18      inquiry in the two contexts is legally distinct because state trade
19      secret law and federal patent law give rise to different bundles of
20      enforceable rights. In other words, the phrase "conception of an
21      invention" is a term of art carrying different legal connotations and
22      implications depending upon the context in which it arises.
23  *17 to *18.
24     The Federal Circuit's holding in *University of West Virginia v. Van Voorhies*,
25  278 F.3d 1288 (Fed. Cir. 2002) does not change this result.  First and foremost,
26  defendant have incorrectly stated the facts of *Van Voorhies.* The only two claims at
27  issue were alleged duties under "contract" and "common law" to assign a
28  continuation of an original patent application to plaintiff WVU.  *Id*. at 1294 ("WVU

sued VanVoorhies . . . alleging that VanVoorhies breached his duty to assign the second invention to WVU"); *see also University of West Virginia Bd. of Trustees v. Van Voorhies*, 84 F. Supp. 2d 759, 773 (N.D. W. Va. 2000) (describing the complaint of WVU in the case below). WVU did not assert fraud or breach of fiduciary duty claims as defendants state. In addition, WVU specifically argued, as its sole and only theory for proving breach of contract, that a certain application was a continuation-in-part of an earlier patent application. *Van Voorhies*, 84 F. Supp. 2d at 774. There were no alternative theories presented other than the "continuation" theory. *Id.* By contrast, in this case plaintiff does not argue that defendants' subsequent applications are continuations of his application; he simply argues that defendants have wrongfully taken confidential information, some of which happens to have been written down in a patent application, for their own use without paying for it. *Van Voorhies* is not applicable here.

### C. Neev's Fifth and Sixth Causes of Action for Fraud and Promissory Fraud Do Not "Necessarily Depend" Upon Patent Law.

In an effort to create the impression that Neev's fraud claims are entirely focused on the issue of patent ownership, defendants cherry-picked a few of the misrepresentations that Neev asserts in his First Amended Complaint. Incorporation of allegations by reference is allowed under the Federal Rules of Civil Procedure. Rule 10 states that "[s]tatements in pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion." F.R.C.P. 10(c). It is common practice to incorporate allegations made in the body of a complaint in a later claim. This practice promotes concise and simple pleadings. *Fontana v. Haskin*, 262 F.3d 871, 877 (9th Cir. 2001). Defendants now seek to ignore all incorporated allegations, again quoting a single paragraph but ignoring all others.

#### 1. Neev Alleges Numerous Misrepresentations That Are Not

**Patent-Related In Any Way.**

Defendants ignore, among others, the following misrepresentations Neev alleged in the First Amended Complaint:

- Prior to Mr. Neev disclosing the Confidential Information to them, the defendants agreed not to disclose the Confidential Information to others without Mr. Neev's consent, and agreed not to use the Confidential Information except as consented to by Mr. Neev. They did so to get him to disclose the information. (FAC ¶ 16.)
- The defendants represented to Mr. Neev that they would hold it in confidence. (FAC ¶ 17.)
- Defendants represented to Neev that he, DaSilva and Choi would each received approximately 1/3 interests in the corporation they were discussing. (FAC ¶¶ 18, 56.)
- Defendants represented that they would maintain the confidentiality of the Confidential Information and would not use it for commercial purposes without Neev's consent. (FAC ¶ 56.)

These misrepresentations are then incorporated, by reference, into each of the Sixth and Seventh Causes of Action. None of these misrepresentations is in any way based on patent law; rather, they are simply allegations that defendants made false statements and promises, upon which Neev relied to his detriment and damage. In addition, defendants' misrepresentation that they would maintain the confidentiality of his Confidential Information[1] and that the defendants would maintain the confidentiality of it are not "patent-centric" in any way. Such misrepresentations would not trigger § 1338(a) jurisdiction even if they were made regarding pending patent applications. Thus, it is quite clear that neither the fraud

---

[1] In their Memorandum, defendants misstate that the allegation is focused only on a promise to maintain the confidentiality of the "Invention," in an apparent effort to make it appear as if the allegation does not include within its scope the Confidential Intellectual Capital described earlier in the First Amended Complaint.

cause of action nor the promissory fraud cause of action "necessarily depend" upon patent law.

### 2. Even Neev's Allegations that Mention the "Invalid Applications" Do Not "Necessarily Depend" on Issues of Patent Law.

In paragraphs 22, 27 and 51 of his First Amended Complaint, Neev alleges that defendants DaSilva and Choi engaged in a fraudulent scheme to file two applications that included Choi as an inventor. Neev further alleges that the applications are not valid, but were part of plan to try to misuse Neev's original Confidential Information (including the Invention) or to try to steal it. Even this allegation does not raise an issue of patent law sufficient to create jurisdiction under § 1338(a). In *Altavion*, the Court examined similar allegations. The plaintiff in *Altavion* had alleged misappropriation of trade secrets, and in the context of that claim alleged that the defendants had filed ten fraudulent applications that incorporated the plaintiff's technology. As the defendants do here, the *Altavion* defendants contended that the allegations regarding the patent applications created § 1338(a) jurisdiction. The Court disagreed, stating:

> Defendants' allegedly fraudulent conduct before the USPTO will no doubt be a large part of the proceedings in this action. But the significance of defendants' conduct before the USPTO is not that it forms the exclusive theory upon which plaintiff's claims are based, but rather, that it provides *probative evidence* supporting plaintiff's claims that defendant has unlawfully disclosed and used plaintiff's trade secrets, has breached the parties' contract, and has made false representations to the plaintiff. The mere fact that defendants have filed ten patent applications disclosing various elements of plaintiff's digital stamping technology does not convert this action into one

"arising under" the federal patent laws.

*Altavion*, *supra*, at *16 (emphasis added). The same is true here. In this instance, the fraudulent scheme happened to involve the applications, but the proof (or defeat) of the fraud claims may not hinge on the application of patent law or principals. Defendants ignore that *Altavion* also contained facts referencing USPTO and patent application proceedings.

### 3. Neev's Allegations that Mention the "Invalid Applications" Do Not Remotely Raise Viable Federal Question.

Although Neev has alleged that defendants have erroneously and fraudulently stated the inventorship on the Invalid Applications in an effort to further their fraudulent scheme, Neev has not pleaded any claim of patent invalidity or sought correction of inventorship. In fact, the First Amended Complaint explicitly disclaims any intent to seek such relief or assert such a claim. (FAC ¶ 27.) To the extent such a claim was even pleaded, it still would not create jurisdiction, because there is no such thing as a claim in federal court (or any court) to invalidate a patent application or correct inventorship. *See Altavion*, *supra*, *22 (citing, among other cases, *Eli Lilly & co. v. Aradigm Corp.*, 376 F.3d 1352, 1356 n.1 (Fed. Cir. 2004). Thus, there would be no basis for exercising federal jurisdiction anyway.

### D. To The Extent This Court Maintains Jurisdiction Over One or Two Causes of Action, This Court Should Remand the Remainder.

This Court should not assert supplemental jurisdiction over trade secrets and conversion claims that the *Altavion* Court has held belong in state court. To the extent this Court exercises jurisdiction over the third, fifth or sixth causes of action, this Court should remand the remaining causes of action back to state court where they belong.

9

PLAINTIFF'S MOTION TO REMAND    C 08-2860 PVT

## III. CONCLUSION

Neev's claims do not "arise under" the patent laws, and this Court should remand this matter back to state court where it belongs.

Dated: August 26, 2008  
TEUTON, LOEWY & PARKER LLP  
KENNETH G. PARKER

By: /s/ Kenneth G. Parker  
Kenneth G. Parker  
Attorneys for Plaintiff